# Holland *v.* Tenn. Coal, Iron & Railroad Co.

*Action for Damages by Administrator of Person Killed.*

1. *Master's duty and liability in matter of providing safe machinery and appliances, and employing competent workmen.*—In providing machinery and appliances for use in his business, and employing workmen to carry it on, the master is not an insurer of the absolute safety of the one, or the absolute competency and carefulness of the other, but is only required to exercise reasonable care in the original selection of each, and further reasonable care in discovering and remedying any defect or incompetency which may afterwards be developed.

[Holland v. Tenn. Coal, Iron & Railroad Co.]

2. *Evidence of practice or usage in other similar works.*—As bearing on the question of negligence in the use of particular machinery and apliances, the master (or employer) may show that they are used by the owners of other similar works, well regulated and prudently managed; and the principle extends to the character of the workmen employed in the performance of any particular duty, as regards the question whether any special skill or experience is necessary to constitute reasonable competency.

3. *Master's duty to inform workmen of danger in service.*—If the master (or employer) directs his servant (or workman) to perform some service to which a particular risk is attached, which is not patent and open to the observation of any person exercising reasonable care and prudence, it is his duty to inform the workman of it, and caution him against it; but, if there is both a patent and a latent danger, and injury results from the former, the failure of the master to inform the workman of the latter does not render him liable for the resultant damages.

4. *Negligence of master or fellow-servant.*—When the action is not founded on the statute (Code, §§ 2590–92), but seeks to hold the master liable in damages for injuries resulting from his alleged negligence, (1) in not providing safe machinery and appliances, (2) in not employing careful and competent workmen, and (3) in not informing plaintiff's intestate, who was injured, of a latent peril in the service which he was directed to perform; a recovery can not be had for injuries resulting from the negligence of another servant engaged in the same work, in direct violation of the orders of the superintendent.

5. *Contributory negligence.*—If the negligence of the plaintiff's intestate, or his failure to use due diligence to get out of the way of the impending danger, proximately contributed to the injury received, a recovery can not be had; yet the jury may, in determining what was due diligence, or the want of it, consider the fact, if establshed, that he was panic-stricken and his energies paralyzed by the awful nature of the sudden catastrophe, being overwhelmed by a stream of molten iron in the ditch in which he was working.

6. *Same.*—A charge which instructs the jury that, if the plaintiff's intestate was guilty of negligence, "however slight that negligence may have been, if it was such that but for it the accident could not have happened, then plaintiff can not recover," though not strictly accurate in failing to limit the contributory negligence to that which was proximate, is not a reversible error when construed in connection with the evidence, which only showed proximate negligence, if any. as by failing to get out of the ditch when ordered by the superintendent of the work.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by James T. Holland, as administrator of the estate of Columbus Jones, deceased, against the Tennessee Coal, Iron & Railroad Company, a corporation engaged in operating a furnace at Ensley, to recover damages for the alleged negligence of the defendant, which caused the death of the intestate, and was commenced on the 8th September, 1888. The complaint contained three counts, which alleged, in substance, that the injuries were caused by the defendant's negligence, (1) in operating the furnace so negligently and carelessly "as to cause molten iron to come in contact with the

person of said Columbus Jones, whereby he was so badly burned that he died of his injuries" a few days afterwards; (2) in employing incompetent and unskillful workmen in and about the furnace, whose carelessness and want of skill caused the injury. A demurrer to the complaint was overruled, and the cause was tried on issue joined on the pleas of not guilty and contributory negligence.

The evidence on the trial showed that the accident occurred on the 7th July, 1888, at the defendant's furnace, where the plaintiff's intestate, with two other negroes, was at work in digging a ditch, under the supervision of one Cunningham, who was foreman of the furnace, for the purpose of drawing off a "boil" of molten iron, which had formed in the trough, and obstructed the flow of the metal in the regular channel; that the three were regularly employed at the "stock-house," where their duties were " to load and unload fuel and ore, and such like work," but were called off by the superintendent to dig the ditch; and the defendant's evidence tended to show that, at the time they were employed, "they contracted with reference to no special duties, but for the purpose of serving where they were wanted." The ditch was about finished, and Cunningham had told the men to come out of it; Harold being the nearest to the "boil," Barker several feet behind him, and plaintiff's intestate was some distance in the rear, about twenty-five feet from the "boil." The ditch was dug to a depth sufficient to carry off the mass of molten iron which formed the "boil," and within about a foot of it, leaving only a narrow wall of earth between. Harold struck his shovel into this wall, and pierced or punctured the " boil," which at once "burst," or "exploded," as the witnesses said, and the mass of molten iron flowed down upon the three men in the ditch, causing injuries from which each of them died soon afterwards. There were two eye-witnesses of the accident, one of whom testified that Cunningham, after telling the men to get out of the ditch, immediately told Harold to "clean out a little more of the loose earth at the bottom, and then get out;" that Harold then "took his shovel, as if to shovel out the earth, and, in doing whatever he did, plunged his shovel into the boil; but why he did it, or at what place he punctured the boil, none of the witnesses could tell." Cunningham, the other eye-witness, testified that he did not tell Harold to clean out a little more loose earth from the bottom, but told him to get out of the ditch, and not to touch the "boil," adding, "I will open it myself." Cunningham testified, also, "that Jones and Barker would, in his opinion, have been beyond danger, if they had left the ditch when he told them to get out."

[Holland v. Tenn. Coal, Iron & Railroad Co.]

There was no conflict in the evidence as to the proper method of removing a "boil," nor as to Cunningham's knowledge and competency; nor as to the manner in which the work was conducted under his supervision. "In properly draining a boil, the experts testified, the ditch should be dug up to it, leaving only a wall of earth between, eight to twelve inches thick, according to the size of the boil; after completing the ditch the men get out of it; and the boss, standing out of the ditch, then punctures it with a long crow-bar, or other such instrument, which he plunges into it from the upper side, and in the direction of the bottom, at the side nearest the ditch; whereby an opening is made through the crust of the boil and the wall of earth, and the contents then run into the ditch." The evidence showed, also, without conflict, "that there was no special danger attending the operation, when properly done." The evidence showed, also, that plaintiff's intestate had been in the defendant's employment not more than a week, had never seen a furnace before, nor a "boil," and had never before been employed in the kind of work in which he was injured; "and there was evidence, also, tending to show that said Harold and Barker were inexperienced in these matters, and had never before seen a boil. . . It was proved without conflict, that none of the three men were instructed or informed, either by Cunningham (the foreman) or Hargreaves (the superintendent), or by any one else, that the work which they were called on to perform was dangerous, or were informed of any danger of any kind attending the work or its improper performance, but they knew that the purpose of opening the ditch was to drain the molten iron from the boil. . . There was evidence tending to show that Jones and Barker had sufficient time to get out of the ditch after the boil was burst, or exploded, and to escape the hot iron; and there was evidence tending to show the contrary."

"In the course of the trial, the court permitted the defendant, against the objection of the plaintiff, to introduce evidence tending to show that it was usual and customary in well regulated furnaces to employ 'stock-house men' to do the work in which the deceased, Harold and Barker were employed" at the time of the accident; "that it was usual and customary, in all well regulated and well conducted furnaces, to call the ordinary laborers from the stock-house to cut such ditches, and such laborers had been found competent for such work." The plaintiff reserved an exception to the admission of this evidence.

The above being "the substance of all the evidence," in connection with the facts stated in the opinion, the court gave

the following charges to the jury, on request of the defendant, the plaintiff duly excepting to each:

"(1.) If the jury believe from the evidence that the injury was caused by Harold tapping or opening the boil, and the running of the melted iron down in the trench coming in contact with plaintiff's intestate; and if they further believe from the evidence that the said Harold in tapping the said boil was acting against the orders of Cunningham, and the same was no part of his employment; then this defendant would not be liable in this action, and they must find for the defendant."

"(2.) The negligence charged in the first count is so negligently conducted the operations of said furnace as to cause the molten iron to run down upon plaintiff's intestate; and if the jury believe from the evidence that the cause of the injury was that the boil was opened by Harold, and the melted mass ran down upon plaintiff's intestate and injured him; and if they further believe that the pricking of the boil was not a part of Harold's duty or employment, but that he pricked the boil against the orders of Cunningham; then the plaintiff could not recover on the first count."

"(3.) If the jury believe from the evidence that there was no special danger attending the work for which plaintiff's intestate was engaged at the time of his injury, then it was not the duty of defendant to notify the plaintiff's intestate of the character or danger attending the said work."

"(4.) If from the evidence the jury believe that the boil of iron which existed near the trench dug by plaintiff's intestate and his co-servants was a patent and unobscured danger, being a danger which is the subject of common knowledge, and which could readily have been seen by common observation; and if the jury further find that the servant, William Harold, punctured and opened said boil, after he had been warned and instructed not so to do by his foreman; then the employer is not responsible for any injury occasioned by such an act of the servant Harold."

"(5.) If you believe from the evidence that the plaintiff's intestate was guilty of negligence, I charge you that, however slight that negligence on his part may have been, if it was such that but for that negligence the accident could not have happened, the plaintiff can not recover."

"(6.) If the jury believe from the evidence that the boil of iron which existed near the trench dug by plaintiff's intestate and his co-servants, was a patent and unobscured danger, and the jury further find from the evidence that the defendant exercised due care and diligence in the selection of careful and prudent men to perform said work, the care and diligence which

a man of ordinary prudence, engaged in like business, would have exercised for his own protection; then the employer is not responsible for an injury to a servant occasioned by the negligence or carelessness of a co-servant."

"(7.)  You can not find for the plaintiff, if you believe from the evidence that the injury to plaintiff's intestate was in part caused by his own negligence, and that such negligence on his part proximately contributed to his injury."

"(8.)  It was the duty of the plaintiff's intestate to have used due diligence in trying to get out of the way of the molten iron, when he saw it flowing towards him in the ditch (if you believe he saw it, or could have seen it by the exercise of due care); and if he failed to do so, and because of such failure he was burned and injured, then you must find for the defendant."

"(9.)  The defendant did not owe the plaintiff's intestate the absolute duty of employing competent and skillful co-servants, but it was only the defendant's duty to use due diligence and care in the selection and employment of competent and skillful co-servants."

"10.)  The law does not require that the defendant should insure the selection and employment of competent and skillful co-servants, but it was only the duty of the defendant to use due care and diligence in the selection and employment of competent and skillful co-servants; and if in the exercise of such care and diligence the defendant should nevertheless select and employ an incompetent and unskillful servant, the defendant would not be liable because of the selection and employment of such incompetent and unskillful servant."

CABANISS & WEAKLEY, and JNO. M. CHILTON, for appellant, cited *Railroad Co. v. Richardson*, 91 U. S. 454; *Railroad Co. v. Clark*, 108 Ill. 113; *Thrash v. Bennett*, 57 Ala. 156; *Railroad Co. v. Bayliss*, 74 Ala. 150; *Railroad Co. v. Jones*, 71 Ala. 487; 7 Amer. & Eng. Encyc. Law, 832; *Smith v. Car Works*, 1 Amer. St. R. 542; *Railroad Co. v. Fort*, 17 Wall. 553.

HEWITT, WALKER & PORTER, *contra*, cited *Railroad Co. v. Arnold*, 84 Ala. 159; *Railroad Co. v. Allen*, 78 Ala. 494; *Railroad Co. v. Propst*, 83 Ala. 518; *Thomas v. Railroad Co.*, 42 Ala. 672; *Railroad Co. v. Smith*, 59 Ala. 245; *Perry v. Marsh*, 25 Ala. 659; 2 Thomp. Negligence, 130; 1 Shear. & Redf. Negligence, § 203; 36 Ark. 17; 5 Ohio St. 541; *Potter v. Railroad Co.*, 94 Amer. Dec. 548; *Chapman v. Railroad Co.*, 75 Amer. Dec. 344; Wood's Master & Servant, §§ 335,

354; 33 Amer. & Eng. R. R. Cases, 319, note; *Smoot v. Railroad Co.*, 67 Ala. 13.

McCLELLAN, J.—This is an action for damages for personal injuries to appellant's intestate, resulting in his death. The complaint contains three counts, each of which relies upon the negligence of the defendant company, and not upon that of fellow-servants. The case is, therefore, not bought under the employer's act (Code, §§ 2590 *et seq.*) The first count alleges that the defendant, being engaged in the business of operating a furnace for the purpose of smelting iron ore, so negligently conducted said business as to cause molten iron to come in contact with the person of plaintiff's intestate, inflicting injuries from which he died a few days afterwards. The second and third counts proceed on the theory, that the defendant negligently employed incompetent servants in the particular work upon which they and the intestate were engaged at the time of the accident, and the injury resulted from the incompetency of these co-servants of the intestate. The trial developed three controverted issues: 1st, whether defendant was negligent in employing stock-house men having no special knowledge, skill or experience, to do the work in which the injury occurred; 2d, whether defendant was negligent in failing to instruct said employés as to the perils incident to the work they were put to do; and 3d, whether plaintiff's intestate was himself guilty of negligence which proximately contributed to the injury.

1. With respect to the care a master or employer must exercise in the selection of servants, and in the use of machinery and appliances in his business, our own decisions, following long and well established principles, leave no room for doubt. The master is in no case an insurer of the absolute safety of the appliances and machinery employed in the business. He is in no case held to an undertaking to select absolutely competent and careful servants. The rule requires of him no more than the exercise of reasonable care in either case—such care only as men of reasonable and ordinary prudence exercise; and when he has done this, he can not be held responsible for injuries which result from the incompetency of servants, or latent defects in machinery, so selected and employed. The only further duty then upon him is, the exercise of care in ascertaining any incompetency of the servant, or defect in the machinery, which the service may develop, and thereupon discharging the one, and discarding the other. The selection of a servant must, of course, be made with a view to the nature of the employment. If it involves special knowledge or ex-

perience, only men of special knowledge and experience should be employed. If the work may be well done by the unskilled and inexperienced, it can not be said that the master is lacking in the measure of care he owes to other employès, should he employ unskilled and inexperienced men upon it.—*M. & O. R. R. Co. v. Thomas*, 42 Ala. 672; *Smoot v. M. & M. R. R. Co.*, 67 Ala. 13; *Tyson v. S. & N. R. R. Co.*, 61 Ala. 554; *M. & M. R. R. Co. v. Smith*, 59 Ala. 245.

2. The men employed in the work of cutting a trench, for the purpose of drawing off the "boil" of molten iron, were stock-house men. It appears that the ordinary duties of such men were not such as to afford them any training or experience with respect to the work these employès were put to do, and it did not appear in fact that they had had any experience or training. As bearing on the question of defendant's care and diligence in employing them for this purpose, evidence was received, against plaintiff's objection, that many well regulated furnaces habitually employed this class of men for this particular service.

The assignments of error bring under review the ruling of the court in this regard. It is admitted in argument, and fully established in our decisions, that the custom and usage of other well regulated businesses of the like kind, as to the use of certain machinery and mechanical appliances, may always be adduced in evidence, as tending to negative the charge of negligence, when that charge is based upon the use of such machinery and appliances by the defendant.—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494; *Ga. Pac. Railway Co. v. Propst*, 83 Ala. 518; *Ala. Gr. So. R. R. Co. v. Arnold*, 84 Ala. 159. But it is insisted that the same rule does not apply with respect to the employment of human beings. We are unable to perceive any sound reason for this insistence, at least as applied to this case. The presumption is, that well regulated furnaces exercise due care in the conduct of their business. If it is customary for them to employ a particular class of men for a particular purpose, the further presumption is, that that class of men are competent for the work in hand; and their competency may be the result either of a special knowledge or experience with respect to the particular thing to be done, or from the work being such as to require no special knowledge or experience. In either case, the fact of the custom or usage of prudently managed furnaces to employ that class of men is some evidence that the defendant company was not guilty of negligence in their employment.

3. Whether the defendant was negligent or not in failing to notify and instruct the intestate and his fellow-servants as

to the dangers of the work they were directed to do, depends upon the further consideration, whether the peril involved in it was patent or latent—such as could be seen and known by ordinary care and prudence in the use of the senses, or such as was obscured and could not be seen or appreciated. If the former, the law is well settled, that the master need not advise his servants of its existence, and instruct them as to the means necessary to its avoidance, since they, equally with himself, are held to know both the fact of peril, and how to avoid or escape it.—Wood's Master & Servant, § 335; *Perry v. Marsh*, 25 Ala. 659; 1 Thompson on Neg., 971, § 2; p. 979, § 9; Shear. & Red. Neg., § 203. On the other hand, it is the imperative duty of the master to inform the servant of all latent dangers incident to the service, and instruct him as to their avoidance.—Wood's Mast. & Serv. § 354, and authorities *supra.*

The evidence tended, in some degree, to show two distinct elements of danger incident to the work, upon which the plaintiff's intestate was engaged when the injury was suffered —one open to ordinary observation, and capable of being measured and judged of by men of no special knowledge or instruction in the premises; and the other latent in character, with nothing which could be seen and understood by the unskilled and uninstructed to give warning of its presence, or suggest means of avoiding it. The "boil" of iron, while its lower part had sunk down considerably—two and a half, or three feet, may be—into the earth, yet protruded above the surface, and was visible to those engaged in cutting the trench. It was common knowledge, appreciable by inexperienced as well as experienced persons, that if the ditch was open entirely up to the melted mass, its bottom being below the lowest estimated point of the "boil," the iron would immediately flow into and along the trench, thus imperilling those who should be in there at the time. This was the open and unobscured danger, which was sought to be guarded against by leaving a wall of earth between the trench and the "boil," of from eight to twelve inches thick, the purpose being to break down this wall by piercing it with a long crow-bar after the laborers had left the trench. Of such a patent danger there was no duty on the defendant to give the employès warning. The other peril arose from the fact, supported by a tendency of the evidence here, that a "boil" of iron upon being punctured, and having its shell broken, bursts, and throws out molten metal in all directions—"explodes," as some of the witnesses stated as to this one, though this term was said to be inapt and inaccurate by others. Of this peril—the danger of the flying

[Holland v. Tenn. Coal, Iron & Railroad Co.]

molten iron—resulting from unseen and unappreciated conditions and forces, the inexperienced man would know nothing by the exercise of his senses. It was a state of things which would not address itself to his comprehension, and of which he could only come to a knowledge by being instructed in regard to it. We are of the opinion, that plaintiff's intestate and his fellow-servants should have been advised of this latent danger, when they were put to work so near the "boil" as that the lack of ordinary prudence and care on their part might not only have started the flow of iron into the trench—this they could see, and perhaps could have escaped from—but also have instantly enveloped them in the flying metal, which they could not anticipate, and from which there was no time to escape.—*Smith v. Peninsular Car Works*, 60 Mich. 501; s. c., 1 St. Rep. 542.

Whether, in point of fact, however, this latent danger did exist, was a question for the jury. It was also for their determination, whether, conceding its existence, the injury resulted from it, from the natural flow of the metal along the trench, or from both combined. They might have reached either one of the four possible conclusions in this connection. If they found the latent danger referred to did not exist, then they could not have rendered a verdict against the defendant for negligence in failing to give notice of the patent danger, since no such duty rested on the defendant. If their conclusion was, that although the latent peril was incident to the thing being done, yet that the men were burned to death by the metal flowing down and along the ditch—the injury thus being produced by the patent danger in respect to which there was no duty of instruction upon the defendant—it still can not be said that the accident was chargeable to defendant's negligence in failing to give proper warning of the unseen peril which did not cause the injury complained of. We assume that the jury were correctly instructed as to defendant's liability, if they found the existence of the unseen danger, that the injury resulted from it, and that there was a negligent failure on the part of those who represented the furnace company to instruct its servants in regard to it, since the record indicates nothing to the contrary. The instructions which were given, as shown by the record, for the defendant, and which proceeded on the theory, supported by one aspect of the evidence, that the only danger incident to the work was an open and unobscured one, or that, whether the only one or not, it produced the injury; and were to the effect that, if the jury found the danger to be one that could be readily seen by common observation, and this danger was set in motion, so to speak, by an act of intes-

tate's co-laborer, against which he had been warned and instructed, the defendant was not liable, &c. &c.,—are correct expositions of the law applicable to that phase of the facts.

4.   The action being for the negligence of the master, and not under the statute for that of a fellow-servant, it follows, of course, that the defendant is not liable for an injury produced by an act of intestate's fellow-servant, done not only beyond the scope of his employment, but against the express orders of the defendant's agent in charge of the work.   We understand charges one and two to assert this doctrine.   There was evidence tending to support the facts they hypothesize.   If there was another state of facts which the evidence tended to support, and upon which the defendant would be liable for the act referred to, and the plaintiff apprehended the charges as given might mislead the jury by obscuring this other aspect of the evidence, he should have asked an explanatory charge, or an independent instruction upon that phase; and for aught the record shows, such a charge may have been asked and given.

5.   It only remains to be considered whether the instructions given in respect of the alleged contributory negligence of plaintiff's intestate were correct.   Charges 7 and 8 on this subject, to the effect, respectively, that the jury "can not find for the plaintiff, if you believe from the evidence that the injury to plaintiff's intestate was in part caused by his own negligence, and that such negligence on his part proximately contributed to his injury; and that it was the duty of plaintiff's intestate to have used due diligence in trying to get out of the way of the molten iron, when he saw it flowing towards him in the ditch (if you believe he saw it, or could have seen it by the exercise of due care), and if he failed to do so, and because of such failure he was burned and injured, you must find for the defendant,"—are manifestly sound statements of the doctrine of contributory negligence.   The fact, if it be one, that the intestate was panic-stricken, and his energies paralyzed by the awful nature of the impending catastrophe, might be proper to be considered by the jury, in determining what effort would amount to due diligence, or what omission of effort would be negligence under all the circumstances; but no such consideration can relieve from the duty of diligence on the one hand, or condone negligence on the other.

6.   Charge 5 given for defendant is in the following language:   "If you believe from the evidence that the plaintiff's intestate was guilty of negligence, I charge you that, however slight that negligence on his part may have been, if it was such that but for that negligence the accident could not have

[Smith & Co. v. Western Railway of Alabama.]

happened, the plaintiff can not recover." There are very respectable authorities which hold that the abstract proposition of this instruction is sound.—*Murch v. Concord R. R. Co.*, 29 N. H. 9; s. c., 61 Amer. Dec. 631; *Potter v. C. & N. Railway Co.*, 21 Wis. 372; s. c., 94 Amer. Dec. 548. We apprehend, however, that the language employed is open to criticism, if not to condemnation; for that a case may be conceived, in which the negligence of the party injured, while such as that without it the injury would not have been inflicted, yet is not the *proximate* cause of the accident. We need not decide this, however. The charge may be sustained on another consideration. All charges must be referred to, and tested by the evidence in the cause. Applying that principle here, and looking to the testimony, it is seen that the only negligence on the part of plaintiff's intestate, which finds any lodgement in the tendencies of the evidence, and, therefore, the only negligence to which the charge can be held to relate, consisted in the injured party's failing to get out of the ditch, when he was ordered to do so, or when he saw, or should have seen, the molten iron flowing towards him. Unquestionably, this was proximate contributory negligence (*C. & W. Railway Co. v. Bradford*, 86 Ala. 574); and the charge, construed with reference to it, becomes a proper statement of the law, or, at least, is shorn of all capacity to work prejudice to the plaintiff before the jury.

The judgment of the Circuit Court is affirmed.