# Gaines v. Va. & Ala. Coal Co.

*Action on Contract.*

1. *Demurrers to separate suits which were consolidated covered by demurrer to consolidated suit.*—Where a plaintiff brought several separate suits on a contract to recover for monthly sums alleged to be due under the contract, and they were consoli-

dated by order of the court, and at the term of the court at which the suit was to be tried an amended complaint was filed in which each of the installments declared for in the separate suits was included; and demurrers were interposed to each of the original complaints as well as to the amended complaint, the plaintiff could take nothing by reason of any rulings had on the demurrers to the separate complaints, for the reason that he had the full benefit of what had been alleged in each of the separate complaints under the amended complaint, a demurrer to which was overruled.

2. *Contracts; rules for construction of.*—The object of all construction is to ascertain the intent of the parties, and in ascertaining the intent as respects contracts, regard must be had to the subject matter of the contract and the situation of the parties as related to that subject matter.

3. *Same.*—G. leased to a company a tract of coal-bearing land for a period of eight years for mining purposes. The contract of lease after stipulations as to the amount of royalty, the times of its payment, etc., contained the provision that the company "shall mine and pay for all the coal in said seam which can be reasonably mined out, and at the expiration of the lease shall pay for all the coal in said seam on said land whether the same is mined or not." *Held*, as the proper construction of the contract, that the words "which can be reasonably mined out" applied to the entire contract, and the lessee was to mine as other persons desirous of obtaining the best results and using adequate means to achieve it, perform the same kind of work.

APPEAL from Walker Circuit Court.
Tried before Hon. JAMES J. BANKS.

Action by George S. Gaines against the Va. & Ala. Coal Company on contract for mining coal. There were eight separate suits to recover monthly installments accruing under the contract. These were consolidated, and the plaintiff amended his complaint, the first count of which amendment covering all of the several claims specified in the original suits. The defendant demurred separately to each of the original complaints, and also demurred to the said first count of the amended complaint. By these demurrers and also by charges requested, the defendant presented to the court for construction the contract or lease sued on. In this contract was the following stipulation: "The party of the first part (defendant) shall mine and pay for all the coal in

said seam which can be reasonably mined out, and at the expiration of the lease shall pay for all the coal in said seam on said land whether the same be mined or not," at ten cents per ton. The court below held the contract to mean that the defendant was to pay only for the coal left in the land which could be reasonably mined out; and the correctness of this construction was the main question presented on this appeal. During the trial a witness was asked whether or not it was a proper mode to mine coal situated as that in question was with forks, and if so what loss would ensue. He answered that it was and the loss would be ten per cent. Further that the same coal could be mined with shovels without such loss but it would be less marketable. To this evidence the plaintiff objected. The other facts are stated in the opinion.

NORVELL & SMITH and SMITH & WEATHERLY, for appellant.—Where the provision in a coal mining contract for payment of royalty is absolute and unconditional, it makes no difference whether the coal is mined or not. *Lehigh Zink & Iron Co. v. Bamford,* 150 U. S. 665; *Flynn v. Whitebreast &c. Co.,* 72 Iowa 738. (2). The lessee is bound to take out from the mine the amount stipulated in the lease.—*Bute v. Thompson,* 13 M. & W. 487; *McKnight v. Krentz,* 51 Pa. 232; *Galey v. Kellerman,* 123 Pa. 491; *Randolph v. Harden,* 44 Iowa 328; *Tod v. Sambaugh,* 37 Ohio St. 469; *Walker v. Tucker,* 70 Ill. 527. (2). To show that lessee should take out all the coal. *Riddle v. Brown,* 20 Ala. 412; *Pierce v. Tidwell,* 81 Ala. 299; *Williams v. Gibson,* 84 Ala. 228.

COLEMAN & BANKHEAD, *contra,* contended that the proper construction of the words of the contract, "all the coal contained in the seam" meant in their reference to payment for coal not mined, that the lessor was to pay for all coal which could be mined by due care and proper mining methods.

TYSON, J.—The plaintiff, who is the appellant here, leased to the defendant a tract of forty acres of coal bearing land for a period of eight years for mining purposes.

In this written contract of lease, it was provided, in substance, that the lessee, defendant, should mine a stated minimum number of tons of coal each month, for which the lessor, plaintiff, was to be paid monthly as royalty ten cents per ton, less one dollar per day for 2,300 working days, which sum was to be retained by the defendant in payment of a debt due it by the plaintiff. It was also stipulated in the written contract "that the party of the first part (defendant )shall mine and pay for all the coal in said seam which can be reasonably mined out and at the expiration of the lease shall pay for all the coal in said seam on said land whether the same be mined or not" at ten cents per ton. There was a further stipulation that "at the will of either party when or after either party has violated or refused to perform any obligation imposed upon him hereby," the lease may by either party be declared terminated and annulled. Eight separate suits were brought upon the contract to recover for monthly installments of royalty for coal, which were consolidated by an order of the court. At the term of the court at which the cause was tried, an amended complaint was filed, in the first count of which, each of the installments which had, in the original complaints been made the subject of separate counts was included. Demurrers were interposed to each of the original complaints as well as to the first count of the amended complaint. While the record does not show such a judgment upon the demurrers to the original complaints as can be reviewed by this court, yet if it did, the appellant could take nothing by their being sustained, for the reason that he had the full benefit of what had been alleged in each of the separate complaints under the first count of the amended complaint, to which a demurrer was overruled. Waiving the insufficiency in the recital of the judgment entry as showing a judgment of the court sustaining the demurrers to the second and third counts of the amended complaint, and conceding that the question of importance in the record is properly presented by the demurrers to these counts which seek to recover the ten cents per ton for coal left unmined at the expiration of the lease, and the charges given at the request of the de-

fendant relating to the same subject, the question thus raised involves a construction of the contract in respect to the requirement that the defendant shall at the termination of the lease, pay ten cents per ton for all coal left unmined on the land. It is contended for the appellant, that the appellee, under this term, is bound to pay for all coal in place on the leased land, without taking into account such as might be made unmerchantable in the process of mining by becoming mixed with the soil, etc.; or such as might be required for supports for the roof etc.; and that no possibility of obstruction can be considered that might arise from what is known as a "fault" or "a roll" etc.

The contention of the appellee is simply the reverse of each of these propositions. It contends that the words, "which can reasonably be mined out" apply to and qualify the entire contract including the term requiring the mining of all the coal on the land.

The object of all construction is to ascertain the intent of the parties; and in ascertaining this intent as respects contracts, regard must be had to the subject matter of the contract and the situation of the parties as related to that subject matter.

The plaintiff was the owner of a deposit of coal. It was valuable only as it might be dug from the earth and sold in the market, either by himself for his own account or as undertaken by others under contract with him. Whether done by himself or others, there were certain fundamental requirements that must always accompany the proper execution of the work. It is so in every department where human labor and exertion is a factor in the execution of an undertaking; and every contract is made with reference to the existence of such requirements.

In the mining of coal, one of the hazards of the work is the danger of overhead masses falling, if left unsup-

ported; and to prevent this, there must be supports of some kind to the roof. In the absence of any safe mode provided in the contract, it will be presumed that the parties intended to adopt the mode usually adopted and found safe by miners of such coal, more especially in

that general locality. Assuming that the contract here under consideration requires the mining of all the coal under the land, there must be excepted so much as would be reasonably required to support the roof, if pillars of coal is the mode usually adopted. So also, if in getting out coal for the market, some is rendered unmerchantable by being mixed with foreign substances from causes not preventable by prudent management—bestowing such care as a prudent owner operating his own mine and desiring the largest yield would bestow—that such losses in tonnage should be deducted from the tonnage required to be mined.

In respect to what is technically termed "a race," "a fault," and "a squeeze," where from one cause or another, either the danger or cost of mining is increased, it cannot be said, as matter of law, that because of the increased danger or cost, the work may be abandoned, or, on the other hand, that the contract must be construed as a contract to mine all the coal under the surface irrespective of the danger or costs attending it. The contract must receive a reasonable construction. If the danger or cost is such that in the first aspect, a prudent operator having due and reasonable care for the safety and welfare of his men would not risk the danger, and in the other, with an incentive to take out the largest quantity reasonably practicable, would abandon the work rather than remove or evade the obstacle with its attendant expense, the lessee in this case would not be required to incur the risk or cost. Guided by these principles, he cannot magnify dangers or cost, so as to evade the duty of mining all that should be mined, nor, on the other hand, can he be required to assume unreasonable risks or expense wholly disproportioned to the profits that might reasonably be expected from such an undertaking.

Of course the rule is different where one undertakes to pay royalty upon a given number of tons irrespective of whether the coal can be mined reasonably or at all. We construe the words of the contract we have quoted, as applicable to the entire contract; but even without them, there is no fixed number of tons stipulated for, as the total output. The lessee, it is true, is to "mine" all on

[Ford v. Postal Telegraph Cable Co.]

the land, but when he engaged to procure the coal—not at all events, but by *"mining"* for it, it must be understood as implied that he is to mine as other persons desirous of obtaining the best results and using adequate means to achieve it, perform the same kind of work. *Vincent v. Rogers*, 30 Ala. 471; *Grier v. Campbell*, 21 Ala. 327; *Holland v. T. C. I. & R. Co.*, 91 Ala. 451.

It follows from what we have said that the court did not misconstrue the contract.

There is no merit in the objections to evidence. We cannot assume "forks" could not be used in the mining required. True, the contract does not provide they shall be used, but it may also be said, it does not provide against their use. Each party had the right to have his theory of the best and most efficient mode of obtaining the best result sustained by proper evidence.

The judgment of the circuit court must be affirmed.