# Kansas City, Memphis & Birmingham Railroad Co. *v.* Burton.

### *Action by Employe for Damages for Personal Injuries.*

1. *Pleadings; averment of relation of master and servant.*—A complaint which alleges that the defendant was a railroad company, and engaged at the time and place of the casualty complained of, in the operation of a railroad, that the plaintiff was then in its service as a switchman, and while in the actual discharge of his duties as such received the injuries complained of, sufficiently sets forth the relation of master and servant.

2. *Superintendence includes men and appliances necessary for work.* The superintendence of the yard-master of a railway involves the movement of cars, and, of consequence, the control and direction of men and appliances necessary to place the cars in safe and proper positions.

3. *Negligence of superintendent* —The superintendence contemplated by subdivision 2 of section 2590 of the Code is not necessarily that of superintendence over the injured person, but if the negligence of such superintendent results in injury to any other servant of the common master, the latter is liable by the terms of the statute.

4. *Defect in ways must be an inherent part of the same.*—A movable object temporarily placed in dangerous proximity to a railroad track is not a defect in the condition of such track or way.

5. *Negligence in not properly placing car.*—One charged wfth the control of cars for placing them in proper position on a side track, who negligently leaves a car at rest in dangerous proximity to the main track, from which injury results, is guilty of actionable negligence.

6. *Different modes of stating same facts not improper.*—A complaint which avers that the negligence causing the injury was that of an employe of defendant who had control of a car, and to whom was intrusted superintendence of moving and placing the car, alleges the same, and not different causes of action.

7. *Combination of causes may be alleged.*—A count in a complaint averring that the injuries to an employe were caused by the negligence of defendant's foreman in placing a car in too close proximity to the track, and to the negligence of defendant's engineer in running the train, is not objectionable.

8. *Employe may assume that the tracks of a railroad are not obstructed.* A complaint alleging that a car was negligently left in dangerous proximity to the main line by which the plaintiff, a switchman on a passing train ignorant of such proximity, was hurt, is not subject to demurrer on the ground that it showed that the plaintiff was guilty of contributory negligence.

Vol. 97.

[Kansas City, Memphis & Birmingham R. R. Co. v. Burton.]

9. *Neither convenience nor custom will justify acts endangering safety of employe.*—That it suited the convenience of the consignee of the cargo of a car to unload it at a certain point, for the car to be placed so that its corner was within nine or twelve inches of cars passing on the main line, is not such a justifying necessity as will relieve the master for liability to an employe injured thereby, nor will proof that cars are so placed by other well regulated railroads justify an act positively wrongful.

10 *Charge opposed to a tendency of the evidence improper.*—There being evidence from which the jury might infer that a car was left dangerously near the adjacent track by the negligence of a yard-master, he having control of the cars and charged with the duty of seeing that the tracks were clear, a request for instructions that there was no evidence of negligence on the part of the yard-master, was properly refused.

11. *Superintendent may perform manual labor.*—That one has superintendence intrusted to him, or who is in charge of cars on a railway, etc., is performing manual labor at the time of the negligent act complained of, does not relieve the master from liability for the results of such negligence.

12. *Contributory negligence; plea of, may be waived.*—When it is manifest from the record that both parties, without objection, have tried an action for personal injuries to its conclusion as if on issue joined upon the plea of contributory negligence, although the record shows no other plea than the general issue, the appellate court will review the rulings of the trial court as if such defense had been specially pleaded.

13. *Contributory negligence, in want of knowledge.*—The fact that plaintiff was one of a crew, acting under the orders of a yard-master, which placed a car in dangerous proximity to the main track, plaintiff having no actual knowledge of the danger, does not impute to him such remissness in failing to inform himself of the dangerous position of the car as will defeat an action for injuries thereby sustained.

14. *Same.*—It being a matter of common knowledge that freight cars are so constructed that employees, in the discharge of their duties, on freight trains often find it necessary to extend their person beyond the surface of the cars; an employe is not guilty of contributory negligence because his person, at the moment of collision, unnecessarily protruded beyond the outer surface of the car, but for which fact he would not have been injured.

15. *Notice of obstruction question for jury.*—Whether the employe had knowledge of a temporary obstruction on a side-track in dangerons proximity to the main line by which he was injured, is a question of fact for the jury, but such knowledge will not be presumed from the mere existence of such obstruction for only a few hours.

16. *Same.*—Nor will such knowledge be presumed from the mere fact that plaintiff knew the general position of the car, but if the evidence shows that he knew the particular danger, and that his attention had been called to it a few moments before the collision which resulted in his injuries, then the unnecessary exposure of his person beyond the line of the car on which he was riding was contributory negligence which would defeat a recovery; *Wilson v. L. & N. R R. Co*, 85 Ala. 269, distinguished.

17. *Concurring acts of negligence must be proved, when.*—If two counts in a complaint aver that the injuries for which damages are claimed were caused by the concurring acts of the engineer of a train in regulating its speed and the act of a yard-master in placing a car danger-

16-97.

ously near a switch and there is no evidence of any negligence on the part of the engineer, the general affirmative charge should be given as to those counts if requested by the defendant.

18. *Proximate cause.*—That the plaintiff was attempting to alight from a train moving at a dangerous rate of speed at the time he was knocked off by an obstruction near the track, is not the proximate cause of the injury received, and charges ascribing negligence in him for being in such position regardless of his want of knowledge of the danger or reasonable apprehension thereof, are properly refused.

19. *Proximate cause.*—The evidence showing that plaintiff had just before the casualty either put on or let off a brake, but not showing which was done; instructions requested to the effect that if the proof did not show as was averred in the complaint that plaintiff was in the discharge of his duties at the time, were properly refused.

20. *Repeating charge.*—Instructions requested in substantially the same language as other instructions given, are properly refused.

21. *Evidence of wages of witness inadmissible.*—In an action by an employe to recover damages for personal injuries sustained in the master's service, evidence of the wages of another employe at the time of the injury and at the time of the trial is irrelevant.

22. *Evidence as to track at other places inadmissible.*—In such action when the yard-master testified that there was no "clear posts," where plaintiff was injured, it is error to reject the testimony of such witness that there were several "clear posts" in other portions of the railroad yard.

APPEAL from City Court of Birmingham.

Tried before Hon. H. A. SHARPE.

Action by J. W. Burton, by his next friend, against the Kansas City, Memphis & Birmingham Railroad Company to recover damages for personal injuries caused by defendant's negligence.

The complaint, as amended, contained eight counts. There were many demurrers interposed to the counts, the grounds of which, and the rulings thereon, are sufficiently stated in the opinion. On the examination of Ben Freeman, the foreman of the switch-engine when plaintiff was injured, the plaintiff asked said foreman the following question: "How much did they give you at the time Burton was hurt?" And upon his answering this question, the plaintiff then asked the following: "How much now?" The defendant separately objected to each of these questions, and reserved separate exceptions to the overruling of his objections, and likewise excepted to the courts overruling each of his motions to exclude each of the answers thereto. On the examination of one Parsons, who testified that he was the yard-master of the defendant at the time of the injury to Burton, and he further testified that there were "no clear posts," where Burton got hurt, at the time he was hurt. He further testified that there were three, four, or five clear posts in other portions of the yard. The defendant moved to ex-

[Kansas City, Memphis & Birmingham R. R. Co. v. Burton.]

clude the testimony of the witness to there being other clear posts in the yard, and duly excepted to the court's overruling these notions. There were requested by the defendant 61 charges, which the court refused to give, and to the refusal of each of which the defendant separately excepted.

Among the number of which special reference is made in the opinion are the following : "(19) If the jury find that the placing of the refrigerator car in the position in which it was placed was negligence on defendant's part, and further find that said car was so placed by defendant's foreman, Ben Freeman, and if the jury further believe that said Ben Freeman in so placing said car, was performing manual labor, as a common switchman, then he was not a person intrusted with a superintendence, in the exercise of such superintendence, and defendant would not be liable for his negligence in such act." "(54) If you believe that defendant's foreman, Ben Freeman, when he cut loose the engine from the refrigerator car on the cold-storage track, at the place in which it was at the time of plaintiff's injury, was doing the work of the switchman Burnett, then, in doing said act, said Freeman was a fellow-servant with the plaintiff and, even, if you believe he performed it negligently, you are not authorized to charge the defendant with his negligence." There was judgment for the plaintiff for the sum of $4,250, and the defendant brings this appeal, and assigns one hundred and eight errors in the rulings of the court.

WALLACE PRATT, and HEWITT, WALKER & PORTER, for appellant, in an extensive printed brief, insisted that the demurrers should have been sustained, citing *M. & B. R. R. Co. v. Holborn*, 84 Ala. 133 ; *Smith v. R. R.* 75 Ala. 449 ; *H. A. & B. R. R. v. Walters*, 91 Ala. 435 ; that two species of negligence cannot be joined in one count : Tylers Stephen on Pl. 339 ; Bliss on Pl. § 317 ; that the evidence as to the clear posts was inadmissible : *L. & N. R. R. v. Allen*, 78 Ala. 494 ; *Ga. P. R. R. v. Propst*, 83 Ala. 518 ; *Holland v. R. R.* 8 So. Rep. 524 ; *A. G. S. R. R. v. Arnold*, 84 Ala. 159 ; *L. & N. R. R. v. Hall*, 87 Ala. 708 ; that actual knowledge on the part of plaintiff of the dangerous proximity of the car was not necessary : *Harris case*, 87 Ala. 708 ; *Wilson's case*, 85 Ala. 269 ; *Thompson v. R. R. Co.* 26 N. E. Rep. 1070 ; *Gibson v. Erie Rw'y Co.* 63 N. Y. 452 ; *Carbine v. R. R. Co.* 38 Am. & Eng. R. R. Cas. 45 ; 26 *Ib.* 344, besides numerous other authorities on the different assignments of error.

J. M. McMASTER, and BROOKS & BROOKS, for appellee, in a lengthy brief, cited in-reply *Leach v. Bush*, 57 Ala. 145 ; *G. P. R. R. v. Davis*, 9 So. Rep. 253 ; and in support of the pleadings: *B'ham Water Works v. Hubbard*, 85 Ala. 179 ; *Rw'y v. Hanlon*, 53 Ala. 70 ; and on the charges: *Smith v. State*, 9 So. Rep. 408 ; *Thompson v. Duncan*, 76 Ala. 334 ; *R. R. v. Jones*, 71 Ala. 487 ; *Ralph & Pitcock v. Union R. R.* 1 L. R. A. 131 ; 2 Thompson on Neg. pp. 985-986-987, *Ib.* p. 980.

Owing to the great length of the briefs it is impracticable to give more than a summary of the points presented.

McCLELLAN, J.—In respect of the duty of the defendant, the railroad company, to exercise care and diligence for the protection and safety of the plaintiff Burton, the averments of the several counts of the complaint are that the defendant was a railroad company and engaged at the time and place of the casualty complained of, in the operation of a railroad, that the plaintiff was then in the service of the defendant in the capacity of a switchman, and that while in the active discharge of his duties as such switchman he received the injuries to recover damages for the infliction of which this action is prosecuted. These averments set forth a relationship between the defendant and the plaintiff at the moment of receiving the injuries from which arises a duty on the part of the former to do nothing which an ordinarily prudent and careful man would not do tending to imperil the latter's safety, and to omit no action in conservation thereof which the dictates of ordinary care, prudence and diligence would suggest, and were, we think, sufficient statements of the duty which the defendant owed the plaintiff in the premises. The special objection urged upon our attention which proceeds on the idea that the allegation that plaintiff was, at the time in question, in the active discharge of the duties incident to his employment, is a conclusion of the pleader and not the statement of a fact, can not avail the demurrant under the decisions of this court. This is apparent from the case relied on by appellant, where the complaint was held defective in that it failed to disclose simply the relationship between the parties—as that of carrier and passenger, or employer and employe— the necessary implication being that the complaint would have been unobjectionable had it averred that plaintiff was defendant's servant and was injured while in the performance of his duties as such.—*Ensley Rwy. Co. v. Chewing*, 93 Ala. 24 ; and to hold otherwise now would be to go far toward overturning the general principle frequently announced

here to the effect that the averments required in this class of actions are but little more than the conclusions of the pleader leaving the facts which support the conclusions to be brought forward in the evidence.— *Ga. Pac. Rwy. Co. v. Davis*, 92 Ala. 300, and cases there cited; *L. & N. R. R. Co. v. Hawkins*, 92 Ala. 241.

2. The complaint is intended to state a cause of action within subdivisions 2 and 5 of section 2590 of the Code. It is insisted by the demurrers that the facts averred fail to bring the case within sub-section 2, and the argument proceeds on the theories, (1.) that there can be no such thing as the superintendence contemplated by that clause with reference to a car or track or other inanimate object, but only of men, and (2.) that the dangerous proximity of a car or other object to the track of a railway constitutes a defect in the "ways" of the defendant under sub-section 1 of section 2590 for injuries resulting from which there could be no recovery except on a complaint stating a case under that clause, and the present does not state such a case. We might concede the first proposition advanced for appellant in this connection—that superintendence of a thing merely not men—is not contemplated by sub-section 2—without committing ourselves thereby to the conclusion sought to be enforced by the demurrer. The superintendence averred has relation to more than the track of the defendant, and the car left dangerously close thereto. The averment is that the yard-master, by whom we understand to be intended a person charged with the control of the tracks and cars in the yard of a railroad, was intrusted with superintendence *in the placing and position* of cars in the yard, and hence necessarily and obviously the performance of his duties involved the *movement* of cars and, of consequence, the control and direction of *men* and appliances necessary to such movement as was requisite to place the cars in safe and proper positions. The essence of the averment, therefore, is that the yard-master had intrusted to him superintendence of the men and appliances used in the placing of this particular car, and that whilst in the exercise of that superinter dence, he negligently permitted and suffered the car to be placed so near to an adjacent track, with a passing train on which plaintiff was discharging his duties as switchman, as that it collided with the person of the plaintiff, and produced the injuries complained of. We are unable to agree with counsel that "the superintendence which comes within the contemplation of the statute shall be a superintendence over the person who complains of the negligence of the per-

son intrusted with it." The remedy for negligence of superior in the control of inferior employees whereby injury results to the latter is given by sub-section 3. Under subsection 2, it is manifest, we think, the liability of the defendant is in no sense dependent upon the relations existing in the service between the negligent and the injured person. If the former has superintendence intrusted to him and is negligent in the exercise of it to the injury of any "servant or employe in the service or business of the master," whatever be the relation *inter se* of the servants, the master is made liable therefor by the very terms of the statute. If a yard-master, charged with the duty of keeping the tracks clear, should negligently obstruct a track, and in consequence the president of the company should be injured in the service of the employer, the corporation, it can not be doubted that the latter would have to respond in damages.

3. As to the other proposition—that the proximity of the car to the track on which defendant's train was being operated, known as the "lead track"—constituted a defect in said track, the argument is clearly at fault. As is well known, the act of February 12, 1885, "To define the liabilities of employers of workmen for injuries received by the workmen while in the service of the employer," now embodied, with some modifications intended, perhaps, to broaden its operation, in sections 2590 and 2591 of the Code, was substantially copied from the English "Employers Liability Act" of 43 and 44 Victoria. That act has been construed by the Queen's Bench Division, and the Court of Appeals of England in respect of what constitutes a "defect in the condition of the ways, works, machinery or plant" of an employer within the meaning of sub-section 1 of section 1 of the statute, as well as in other points involved in this case; and, in view of the source whence our statute came, this judicial construction is, of course entitled to very great weight and influence with this court—an influence even beyond that which in ordinary cases the ability and learning of those courts command. It is the settled construction of the act in that country that no mere obstruction on or too near to the "ways" is a defect therein within sub-section 1. The presence of no foreign body or substance on or dangerously near to the track of a railway, which does not affect the track itself or its condition inherently considered, but is only an obstacle with which moving trains would collide, can be said to constitute a defect in the track. There must be some inherent condition of a permanent nature of the ways, works, machinery or plant, which unfits the thing for its

uses—some weakness of construction with reference to the proposed uses, (as where the ordinary appliances for drawing buckets of water from a well are used to lower and hoist men)—some inadaptation to its purposes (as where the sides of a coke lift are not sufficiently fenced to safely hoist its burden, *Heske v. Samuelson & Co.*, 12 L. R. (Q. B.), 30—some break or misplacement of the parts, or the absence of some part, some innate abnormal quality of the thing which renders its use dangerous (as the viciousness of a horse constituting "plant" in the business of a wharfinger, *Yarmouth v. France*, 19 L. R. (Q. B.), 647—some obstacle in the way of use or obstruction to use which is a part of the thing itself, or of the condition of the thing itself, as holes in or ice upon a way—or the like—to constitute a defect in the ways, works, machinery or plant under the statute. "Suppose, for instance," said Stephen, J., "a drunken man staggering along the road, could that be called a defect in the way? And if not, would it make any difference if he were lying down dead drunk? If such an obstruction is not a defect in the condition of the way, I do not see why a piece of tap should be. I do not think we ought to put so wide a construction on the words 'condition of the way' as to include obstacles lying upon the way, which obstacles do not in any degree alter the powers of the way or alter its fitness for the purposes for which it is generally employed, and can not be said to be incorporated with it. It seems to me, therefore, that the presence of this piece of tap on the road can not be called a defect in the way." In the case from which this language is taken, a workman was killed in consequence of a way, along which it was his duty to draw a bogie loaded with puddled iron at white heat, being obstructed. The obstruction consisted of a piece of tap or slag which had been placed by a fellow-laborer so near to the tramway on which the bogie ran as to collide with it. This was held not to be a defect in the way or in the condition of the way.—*McGriffin v. Palmer's Shipbuilding & Iron Co.*, 10 L. R. (Q. B.), 5. This is in principle precisely our case. We think the doctrine of this case eminently reasonable and sound, and we adopt it; and this notwithstanding a contrary doctrine—that coal left too near a railway track constituted a defect therein—appears to have been taken for granted in the case of *Highland Avenue & Belt R. R. Co. v. Walters*, 91 Ala. 435. Clearly a moveable object temporarily placed in dangerous proximity to a railroad track is not a defect in the condition of such track within the English doctrine, which we adopt as the sounder and better.

[Kansas City, Memphis & Birmingham R. R. Co. v. Burton.]

The track itself is in the same condition after as it was before the object was so placed. A car left standing on the main line of a railway is certainly as obstructive of its use as one too near it on a side track, yet it would be absurd to say that the track under that car, the "way" upon which it stands and which was constructed especially to support it, is rendered defective when it is only subserving the uses for which it was intended. Under most circumstances to so leave a car is negligence ; if so left under the directions of a person having superintendence in the premises, or having the charge or control of the car, the railroad company would be responsible for resulting injuries, but otherwise not. In *McGriffin's case, supra,* the court virtually determined that the plaintiff was entitled to recover if it could be shown that the tap came to be and to remain too near to or on the tramway through the negligence of a person having superintendence—not of the plaintiff, no such question was at all mooted, but—of the placing of the tap or with respect to keeping the way clear ; and, it being admitted that the laborer who actually placed it there had no superintendence and was not in the exercise of any superintendence, the case was sent back that the *nisi prius* court with the aid of a jury, might determine whether the person *against whom negligence was charged in not keeping the way clear,* came within the definition of a "person who has superintendence entrusted to him."

4. Other assignments of demurrer proceed on the theory that there can be no superintendence in respect of an object left dangerously near a way, and no charge or control of a car "at rest"—which has been placed in position and left by those who controlled it up to that time. This objection to the complaint is without merit. If one has superintendence of the tracks and cars in the yards of a railroad and either directs or allows a car to be placed too near another track or, it being there without his fault, suffers it to remain, this is negligence whilst in the exercise of such superintendence within the statute.

So, if one have charge or control of a car only for the purpose of bringing it to rest on a track and he places it in a dangerous position thereon, and in consequence of its being there an injury afterwards results, this is actionable negligence within sub-section 5. Such person must not only exercise due care in moving the car, but he is also under a duty to see that it is not placed and left in a dangerous position.—*Gibbs v. Great Western Rwy. Co.,* 12 L. R. (Q. B.) 208.

5. It is no objection to a complaint framed under this statute that it avers that the negligence which caused the injury was that of a certain employe of defendant who had control of a car and to whom was intrusted superintendence in respect of moving and placing the same. This is not the averment of different wrongs and causes of action condemned in *Railroad Co. v. Dusenberry*, 94 Ala. 413, but merely the statement of the relations of the negligent person to the defendant.

6. If the sixth count is to be construed as charging plaintiff's injury to the negligence of the engineer in the rate and manner of running the train on which plaintiff was at the time *or* to the negligence of defendant's foreman as to the position of the car, it is bad.—*Highland Avenue & Belt R. R. Co. v. Dusenberry*, 94 Ala. 413, s. c. 10 So. Rep. 274. But we do not so construe it, because in the particular averment of negligence the charge is conjunctively made against the foreman *and* the engineer. The specification is of negligent running of the train combining with the negligent position of the car to produce the injury, and thus construed the count is not objectionable, being practically the same in this respect as the 8th count, which throughout avers negligence in placing the car as combining with negligence in running the train to the disastrous consequence complained of.

7. In our opinion, it would be better for the complaint in cases like this to allege the place at which the injury was sustained, at least to aver that the causalty happened in Alabama, but we need not affirmatively decide this point at present.

8. We can not say, even upon the rule which requires pleadings to be construed most strongly against the pleader, that the 7th and 8th counts disclose contributory negligence on the part of the plaintiff. The dangerous proximity of the stationary car to the lead track is alleged, but it is not alleged either that this proximity was obvious, or that plaintiff was responsible for it, or that he knew of it, but to the contrary, his want of such knowledge is directly averred in the 8th count. On the facts stated, the defendant was under a duty to the plaintiff to keep its tracks on which plaintiff had to perform his duties, free from obstruction which would imperil his person while so engaged, and, it not appearing that plaintiff had any thing to do with the placing of the car, he had a right to assume that the way was not dangerously obstructed. The demurrers to these counts which proceeded on the assumption that they showed contributory negligence on the part of the plaintiff were properly overruled.

9. The placing of a car on a spur or side track and leaving it to stand thereon so near to another track as to endanger the persons or employees while in the performance of their duties in the usual and ordinary way upon trains passing along that other track, is negligence unless there is some justifying necessity in the particular instance for such conduct. That a car was so placed and allowed to remain for many hours in this instance is not controverted. The evidence which is intended to show a relieving necessity therefor is also free from conflict and diverse inference. It amounted to no more than this: that it suited the convenience of the consignee of the cargo of this car to unload it on the ground in a street of the city of Birmingham, that he requested defendant to place the car so this could be done, and that to comply with this request it became necessary to stop and place the car soon after it had cleared the switch by means of which the spur-track left the other track, and near thereto, so that the side or corner of the car at the end next to the switch was within nine or twelve inches of the line of passing cars on the other track. There was no absolute or quasi absolute necessity for the car to be unloaded at that particular place or for it to be unloaded on the ground at all. The consignee owned the building which stood along the spur-track on the opposite side of the street from the switch, and by the side of this building and between it and the spur-track was a platform constructed for the purpose of lading and unlading cars therefrom and thereon. It does not appear that there was any reason why this car could not have been set opposite that platform, and thus have cleared the street and been amply distant from the other track to have fully conserved the safety of employees on train passing thereon, and have been unloaded on the platform instead of on the ground, except that it was more convenient to the consignee to unload the car originally on the ground, where there seemed to be some personal occasion for him to have its contents; than for him to subserve this occasion by removing the cargo, which consisted of empty kegs, from the platform to the ground. The basis of the alleged justifying necessity relied on by defendant for misplacing this car was a desire and purpose on the part of its employees to *accommodate* the consignee and help him to get these empty kegs on the ground, and this too in a public street where presumably neither party had any right to place them, or require them to be placed. Under these facts there was no such necessity for the car to be left dangerously near the other track as will relieve the act of leaving and allowing it to re-

main there of its negligent character. It was "reasonably practicable" to have placed the car beyond the danger li~e. To have done so was not only not impossible, but it might have been done without any expense in time or money to the railroad company, and without "greatly [or at all] incommoding" the public. No element of a justifying necessity, indeed, is found in this evidence under the doctrine declared in *Louisville & Nashville Railroad Company v. Hall*, 87 Ala. 708, 717–18, which, as applied to this case, required the car to be placed beyond the line of danger, "if reasonably practicable," and defines reasonably practicability in this connection to mean the feasibility of doing a given thing in such a way as not to greatly incommode the public, or to greatly or unduly increase the expense to the railroad company. No aspect or tendency of the evidence goes to show any sufficient exigency or necessity for placing and leaving this car where it was placed and left, and charges requested for the defendant which were designed to allow the jury to acquit the company of negligence on the ground of such necessity were properly refused.

10. It is not important in this connection what the customs and usages of other well regulated railroads were in respect of placing cars in dangerous proximity to other tracks. It is the well settled law that the fact that other well regulated companies engaged in this business use certain appliances, &c., &c., will justify the use of such appliances by a defendant company, and the same rule would perhaps obtain with respect to the manner of constructing a roadway; and in *Holland v. The Tenn. Coal, Iron & R. R. Co.*, 91 Ala. 444, this doctrine was held to apply to the employment of a certain class of servants by the master to perform particular service, to the extent of holding that the custom and usage of other well regulated concerns engaged in the same busniess to employ that class of servants to do that particular work was competent evidence tending to show due care on the part of the master in the instance under consideration in employing such servants; but the doctrine has never been extended to a case like this, and we are not inclined to so extend it now. The basis of the doctrine in all cases is that it is reasonably safe, or at least that the fact of so doing goes to show that it is reasonably safe, in a defendant to employ those means to any legitimate end which others engaged in well regulated businesses of like kind employ to those ends, and this whether the means of a given case be machinery or men, appliances, or servants of particular qualifications, or lack of especial qualifications.

[Kansas City, Memphis & Birmingham R. R. Co. v. Burton.]

But the doctrine has never been supposed to cover or apply to the manner in which the means are made to accomplish the end, the precise way of using machinery or directing the servants, so that a result accomplished which is negligent in itself is shorn of its negligent quality, not because it is not negligence in others to so act, but simple because whether negligence or not they do so act. Here if the car was left too near the other track, it was negligence for which there was no justifying necessity. It was a wrong pure and simple, and it can be none the less wrong because of its having been committed by other railroads, whether they in a general sense be well regulated or not. Several assignments of error addressed to rulings of the court on evidence and on charges requested by the defendant must fall under this view of the law.—*Hibler v. McCartney*, 31 Ala. 501; *Hill v. Portland R. R. Co.*, 92 Am. Dec. 601; 16 Am. & Eng. Encyc. of Law, 462, and authorities there cited.

11. There was evidence from which the jury might have inferred that the dangerous proximity of the stationary car to the adjacent track at the time of the casualty was due to the negligence of the yard-master either in directing it to be placed there or in failing to have it seasonably removed, he having, it appears, general control of the tracks in the yard and the placing of cars thereon, and being under a duty to keep the tracks along which trains, engines or cars were to be moved reasonably free from obstructions, and hence certain requests of defendant for instructions to the effect that there was no evidence of negligence on the part of the yard-master were well refused.

12. The master is liable under section 2590 of the Code for injuries to a servant which result from the negligence of another servant, who has superintendence intrusted to him, or who is in the charge or control of signal points, cars, &c., although such person when negligent is voluntarily assisting in manual labor.—*Osborne v. Jackson & Todd*, 11 L. R. (Q. B.) 619; hence charges 19 and 54 asked by defendant were properly refused.

13. The remaining questions on the court's rulings as to charges given and refused have reference to the defense of contributory negligence, an issue which was not presented by a special plea, but we shall review the action of the court in respect thereto as if a formal plea had been filed and issue regularly joined thereon. The record before us brings this case clearly within that of *Richmond & Danville R. R. Co. v. Farmer, ante,* 141, quite recently decided, where it is said : "Where it is manifest from the record that both par-

ties without objection have tried a case for personal injuries to its conclusion as if upon issue joined upon the plea of contributory negligence, although the record shows no other plea than the general issue, this court has often reviewed the rulings of the trial court as if such issue had been specially pleaded.—*Prior v. Railroad Co.*, 90 Ala. 32; *Railroad Co. v. Black*, 9 So. Rep. 568; *McCauly v. Tenn., Coal, Iron & R. R. Co.*, 93 Ala. 357; and many others might be cited. This principle is fully recognized in the case of *K. C., M. & B. R. R. Co. v. Crocker, supra.*" And it being apparent from the evidence introduced without objection in the *Farmer case, supra*, " from portions of the charge given *ex mero motu* by the court, to which there was no exception, and from the charges given at the request of both the plaintiff and defendant, that the question of contributory negligence was an issue in the case and tried under the general issue of 'not guilty,' " the rulings of the trial court with reference to that question were reviewed here as if the special plea had been regularly filed and issue taken thereon. In the case at bar, that issue was first gone into by the plaintiff himself by the introduction of evidence tending to show due care and diligence on his part; and evidence to the contrary offered by the defendant was admitted without objection, and charges were given at the request of both the plaintiff and defendant, and doubtless also by the court of its own motion, declaratory of the law applicable to that defense. And while adhering to the conclusions reached in the case of *K. C., M. & B. R. R. Co. v. Crocker*, 11 So. Rep. 262, s. c. 95 Ala. 412, we will try this appeal on the issues upon which by common consent the case was tried below, and review the rulings there had relative to the defense of contributory negligence.

14. Several charges were given for the plaintiff on this matter, several also for the defendant, and very many were refused to the latter. We shall not undertake a detailed discussion of these instructions but shall lay down what we conceive to be the law of the case in that connection and winnow the charges by the standard thus established. The catastrophe happened in the car yards of the defendant, as has been stated, and at a point therein near where a spur track joined another known as the "lead track" by means of a switch. In the forenoon of the day in the afternoon of which the plaintiff was injured, Freeman, the yard-foreman, was directed by the yard-master to place a certain car on this spur track known as the "cold storage track." Freeman accomplished this by means of a switch engine and

crew one of which was plaintiff. The car was pushed in on the cold storage track, and stopped and left soon after it had cleared the switch, and in such position as to leave a space of from nine to twelve inches between it and cars of ordinary width opposite it on the lead track. This was not sufficient to admit of the safe passage of persons on the sides of such cars running on that track. Some hours afterwards the plaintiff was passing the point on a train, where his duty required him to be, with his person protruding or extending beyond the outer surface of the car on which he was at the time, his back or side being turned in the direction he was going, and was struck by or came against the stationary car, and was knocked off and injured. This question of contributory negligence, which we are now to consider, presents itself in two aspects, that is to say with and without reference to plaintiff's knowledge of the dangerous proximity of the stationary car to the lead track and to the car on which plaintiff was passing that place. Assuming first that the plaintiff was without such knowledge, and further that he was not negligent in placing the car there as a part of the crew of this switching engine, negligence is sought to be imputed to him in the first place because he might have informed himself of the position of the car and failed to do so. This position, in our opinion, can not be sustained. Plaintiff's duties as a switchman, involved, in the abstract, only the performance of manual labor in moving and placing cars on the yard tracks of the defendant. It was not his business to determine their location, whence they should be moved or where left at rest, nor his duty to see that the tracks were clear of obstructions. These matters being intrusted to his superiors, whose orders, when not involving obvious peril, he was bound to obey, and over whose conduct he had no control, he had a right to assume that the defendant's duty to afford him a reasonably safe place to work was being properly discharged and that as a consequence the tracks along which his employment required him to go on moving trains were sufficiently free from obstructions to admit of the safe performance of his labor with due care on his part in the usual way. If, therefore, he was in the exercise of the care and diligence characteristic of a man of ordinary prudence and caution under like circumstances, and was without actual knowledge of the perilous proximity of the car, or reason to believe it was dangerously near the lead track, and that proximity was not due to previous negligence on his part, a recovery can not be defeated upon any idea that he was remiss in not informing himself of the situation. 14 Am. & Eng. Encyc. of Law, pp. 843-4.

15. But it is insisted that, leaving other considerations out of view, he was not exercising the care required of him in that his person was unnecessarily beyond the outer surface of the car at the moment of the collision, but for which fact, confessedly, the collision would not have occurred, and he would not have been injured. This doctrine is well established in respect of passengers, but is based in great measure on the considerations that there is no necessity for passengers to so protrude their persons, and that passengers of ordinary care and prudence do not so protrude and expose themselves, considerations which do not apply at all to brakemen, switchmen and the like in the running and handling of freight trains and cars. It is common knowledge that cars of this class are supplied with appliances to enable employees to ascend and descend over their sides, that it is proper and necessary for employees to use them, and that the most prudent men so employed must and constantly do use them, and this while the cars to which they are attached are in motion. It is, moreover, common knowledge that on freight trains, there being frequent occasions for the communication of signals from different parts of the train to the engine and no other practicable means to this end, it is often necessary for employees to extend their persons beyond the surface of the cars to give such signals. In view of all this, the assurance of safety in being on the sides, or beyond the surface of such cars, which is imported thereby, and the consequent idea of the absence of danger from such positions which must naturally be engendered among employees, we can not say that an employe is negligent in extending his person beyond the car even when under the immediate circumstances it is not necessary for him to do so in the discharge of his duties, unless he knows of obstructions, or has reason to believe there are obstructions, which inject an element of danger beyond the ordinary into the situation. This doctrine is directly supported by the case of *Wilson v. Louisville & Nashville R. R. Co.*, 85 Ala. 269, where the act of a brakeman in descending over the side of a car, *for a private purpose of his own*, and not at all in the line of his duty, was held negligent because and *only* because he *knew of* an obstruction at that point.

16. Of course, in such case opportunity on the part of an employe to inform himself of a dangerous obstruction is a matter proper for the jury to consider in determining whether he had knowledge of it, and the evidence may show such opportunity to know the fact as that the conclusion that he did know it would be justified, but in this or some other

mode knowledge must be brought home to the employe; it is not to be presumed from the mere existence of the obstruction, and certainly not to be presumed from the existence for several hours only of such temporary obstruction as is shown here.—*Smith v. Peninsular Car Works*, 12 Am. & Eng. Corp. Cases, 262; *Colbert v. Rankin*, 72 Cal. 197.

17. The evidence is free from conflict that plaintiff assisted in putting the car on the cold storage track, and got upon it after it had stopped and put on the brake so as to keep it in position. If he knew at this time that one end of the car was too near to the lead track, he had such knowledge of the danger he afterwards encountered as taken in connection with the undisputed fact that he was stricken in consequence of his person being outside of the line of the car on which he was riding as it passed this stationary car, as would defeat a recovery because of his contributory negligence.—*Wilson v. L. & N. R. R. Co.*, *supra*. On this point, however, the evidence was conflicting. His version is that the car was pushed in on the spur-track and stopped with its further end from the switch near to where he had gone and was standing, and that after getting on the car at that end and setting a brake which was at that end he walked at right angles with the car over to the lead track and there boarded the engine as it came by, and that he did not see how close to the lead track the other and nearest end of the car was. He also says he did not notice this proximity as he passed the point on the engine later in the day. On this phase of the evidence it may be said that he knew the general position of the car on the cold storage track, but not its particular position thereon with reference to the lead track —he knew it was on that track, not far from the switch, but he did not know it was stopped so soon after passing the switch as to stand dangerously near to the other track. This is an important distinction to be observed in speaking of plaintiff's knowledge of the position of the car and one which is not observed in some of defendant's requests for instructions. Knowing only the general position of the car and, not, on this aspect of the evidence, having had any thing to do with stopping it there, he cannot be said to have known of its proximity at one end to the lead track and hence negligence in allowing his body to extend beyond the surface of the car on which he was riding as it passed that point can not be ascribed to him.

18. On the other hand, there is evidence which goes to show that his attention was called to the fact that the car was dangerously close to passing cars on the lead track a

[Kansas City, Memphis & Birmingham R. R. Co. v. Burton.]

few moments before he collided with it, and also that he, not only knew of the fact of proximity but that he himself gave the signal for stopping the car at that particular spot with reference to the lead track, and personally cut the car loose from the engine at the end nearest to the other track. If this evidence be true, he was not only guilty of negligence which would defeat a recovery in subsequently exposing his person beyond the line of the car on which he was at the time of passing this point, but also, if in fact it were left to him to determine and he assumed to and did determine where the car should be stopped he was guilty of negligence in misplacing the car which would be a defense to this action regardless of the character of his conduct in respect of care and diligence at the time of receiving the injury. But this would not follow from the mere fact that he gave the engineer a signal to stop the car at the place, for *non constat* but that this was done in compliance with specific directions in that regard, as it was open to the jury to infer from the evidence, without his in fact having anything to do with determining where the car should be placed, and without knowledge on his part of the position of the far end of the car with reference to the lead track. In such case, he would have the right to assume that the car was safely placed and to act on that assumption until he knew or had reason to believe to the contrary.

The foregoing considerations dispose of many of the exceptions reserved to the refusal of the lower court to give instructions requested by the defendant adversely to the appellant. Many of the charges so asked were either directly opposed to the views we have stated, or were misleading or abstract when measured by the law, as we understand it to be, as applied to the evidence in the case.

19. The 6th charge given at the instance of the plaintiff is also condemned by these principles. It is this: "The court charges you, that even if Burton [the plaintiff] knew of the dangerous proximity of the stationary car to a passing train, yet the mere knowledge by him of the danger is not of itself a defense, but is only a circumstance to be considered in the question of contributory negligence." As we have seen, the evidence is free from conflict that Burton was struck while his body was exposed beyond the line of the car on which he was riding, and that but for such exposure he would not have been injured at all. This is incontrovertibly and confessedly true, beyond even variant inference. The charge must be referred to this *proof*. And when so referred its clear proposition is this: that the ex-

posure of his person beyond the surface of the car as it was approaching and about to pass the stationary car, but for which exposure he would not have been injured, with knowledge of the proximity of the stationary car and of the danger incident to that proximity, did not constitute contributory negligence on the part of Burton. This is what the charge means and what it must have meant to the jury; and meaning this it is directly opposed to the law as we find and have stated it to be. In support of this charge it is said to be, in the language of the opinion of this court in the case of *Wilson v. Louisville & Nashville R. R. Co.*, 85 Ala. 269. And so it is. But the language is there employed only as a predicate for the further conclusion that knowledge with conduct which is lacking in care only in view and by reason of such knowledge does constitute contributory negligence, which will defeat the action, and this conduct is shown in the present case by uncontroverted evidence. It is further said immediately in this connection in the *Wilson case*, that whether or not plaintiff was guilty of contributory negligence depended upon the use he made of the knowledge. That was not a practical question on the trial of this case; indeed, it was not a question really before the jury at all. It was for all practical purposes confessed that Burton made no use of the knowledge, if any he had; and the sole issue of fact before the jury in this connection was whether he had knowledge of the danger, it being in effect admitted that if he had such knowledge, he was guilty of contributory negligence. It may have been proper for the court in *Wilson's case*, when itself passing on a question of fact to have employed this language, but it was not used with reference to instructions to the jury, and not intended as a rule for the guidance of juries in cases like this and that. The charge should not have been given.

20. As we have seen, the 7th and 8th counts of the complaint ascribe plaintiff's injury to the negligence of the yard-master or foreman in placing and allowing a car to remain dangerously near to the lead track, *and* the negligence of the engineer in the manner of running the train by that point. The evidence fails to show any negligence as to the running of the train, and the jury were, in effect so instructed. The general affirmative charge was requested by defendant on each of these counts and refused. The assignments of error directed against these rulings of the court present this question : Where the injury is laid to the concurring negligence of two persons in respect of different acts or omissions can there be any recovery without proof of both such acts

or omissions?  The theory of each of these counts is that the negligence of the yard master or foreman would have been inocuous of itself, and so with the negligence of those operating the train; or, in other words that notwithstanding the dangerous proximity of the stationary car, plaintiff's person would not have collided with it but for the negligent manner in which the train was run past it, and that notwithstanding the negligence of the engineer or others controlling the train plaintiff would not have been injured had the car been at a safe distance from the lead track.  The case of *Ga. Pac. Rwy. Co. v. Davis*, 92 Ala. 300, 313, is relied on to support the refusal of the trial court to give the affirmative charge on these counts.  We do not think that case is an authority in point.  The differences between the two are material and manifest in this connection.  There the negligence charged against the conductor was wholly dependent upon the existence of the obstruction which was alleged to be due to the negligence of the company.  If no obstruction existed, the conductor could not have been negligent at all.  Here there is no such dependence, but the negligence charged on either hand had no reference to that charged on the other, and either the yard-master or the engineer as the case might be would have been equally negligent had the other been in the highest degree careful and diligent.  In that case, there was no need for the coalescence of the negligence of the company and that of the conductor, since that of the latter resulted solely from the former's want of care and his knowledge of it, and the negligence of the former would have produced the injury as well without as with that of the latter.  Here, according to the averments of these counts, each of the classes of employees against which a want of care is alleged was negligent wholly regardless of the other, and in respect of entirely different acts or omissions ; and it required a combination of the distinct negligence of each to produce the result complained of.  And there being no evidence of one of the co-factors in this necessary combination of negligence, and hence necessarily no proof of the combination which alone is laid in these counts as the efficient cause of the casualty, the case presented by them is not made out, and charges 43 and 44, which directed the jury to find for defendant under counts 7 and 8, if they believed the evidence, should have been given.—*Louisville & Nashville R. R. Co. v. Davis*, 91 Ala. 487, 494.

The requests for affirmative charges on the other counts of the complaint were properly refused, on the principles stated in passing on the demurrers.

21. It may have been negligence on the part of plaintiff to attempt to get off a train moving at a speed of from eight to fifteen miles an hour, and if he had been injured in consequence of alighting it may be conceded that he could not recover. But that is not this case. He did not alight but was knocked off the car. His purpose and effort to alight, if he made such effort, was not the proximate negligent cause of his injury, unless it can be said that the projection of his body beyond the surface of the car incident to the effort, but for which he would not have been hurt, was negligence. Having, as we have concluded, the right to assume the safety of such projection in the absence of knowledge of or reason to apprehend the unusual danger injected into the situation by the proximity of the stationary car, he can not be said to have been negligent in being in that position whatever his purpose was in the premises ; and charges which ascribe negligence to him for being there unregardful of the consideration of his want of knowledge or reasonable ground of apprehension of the danger were properly refused.

22. Many requests by defendant for instructions proceed on the idea that as it was plaintiff's duty to let off a brake near which he was when stricken, and as the evidence showed that he had either just let off *or put on* said brake, but did not tend to show that he did the one thing more than the other, it could not be said that he was injured while in the discharge of his duties as averred in the complaint. These requests were properly denied. Whatever it was plaintiff did with reference to the brake, that was not the cause of his injury. Whatever it was, was finished being done before he was injured. The only figure the brake cuts in the case is by way of supplying an occasion for the plaintiff to be at that particular place on the train at the time of the collision, but his being there was negligence or not as he knew or did not know, or had or had not reason to apprehend the dangerous proximity of the stationary car, wholly irrespective of the brake or his duties in regard thereto.

23. Several of the charges refused to defendant are in the precise or substantially the same language as other requested instructions which were given, and were refused, we suppose on this ground. Appellant can take nothing on account of these rulings.—*Smith v. State*, 92 Ala. 30.

The foregoing will furnish a sufficient guide for the court on another trial ; and we will not undertake to further particularize the charges which should or should not have been

given. Nor will we extend this opinion by discussing the assignments of error which are addressed to the trial court's rulings on the admission of evidence. They were free from error, except in two particulars, viz., evidence of the wages which the witness Freeman was receiving at the times of the casualty and the trial was irrelevant, and evidence of clear posts in the yards at points other than the switch leading into the cold storage track should have been excluded.

Reversed and remanded.