## FALENDER ET AL. v. BLACKWELL, ADMINISTRATOR.

[No. 5,849. Filed November 27, 1906.]

1. MASTER AND SERVANT.—*Independent Contractors.*—*Who Are.* —*Negligence.*—*Liability.*—A person who contracts to do certain work for another, reserving the control and management of the work to himself, is an independent contractor for whose negligence he alone is responsible. p. 126.

2. PLEADING.—*Complaint.*—*Master and Servant.*—*Negligence.*— A complaint showing that defendants employed a person to break up castings by means of dynamite; that such work was done pursuant to the terms of his employment and with the connivance and under the direction of defendants, sufficiently shows the relationship of master and servant and not that of independent contractor. p. 126.

3. NEGLIGENCE.—*Master and Servant.*—*Dangerous Work.*—*Liability for Authorizing.*—The employment of a person, whether as servant or as independent contractor, to break iron castings

Falender *v.* Blackwell—39 Ind. App. 121.

with dynamite in a thickly populated city, making it unsafe for citizens using the streets, renders the employers liable for injuries caused by negligence in the conduct of such work. p. 127.

4. MASTER AND SERVANT.—*Manner of Work.—Negligence.—Liability.*—An employer who controls the manner and means of work of an employe is liable for injuries caused by the negligence of such employe.     p. 127.

5. SAME.—*Relationship.—Evidence.*—Evidence that defendants employed a person to break iron castings with dynamite; that they gave him money with which to purchase dynamite; that they were on the grounds when the shooting occurred and told him where to place the charges; that one was present when decedent was hurt; that they furnished old carpets to be used to muffle the sound; that they anticipated danger, feared arrest, and received complaints from persons living near by, sufficiently shows the relationship of master and servant.     p. 128.

6. EVIDENCE.—*Breaking of Castings with Dynamite.—Custom.*— Evidence of the custom of others in the manner of breaking iron castings with dynamite is not admissible in an action against defendants for negligence in doing such work, thereby causing the death of decedent.     p. 129.

7. SAME.—*Noise of Explosions.—Notice.*—Evidence of the noise of explosions of dynamite used by defendants in breaking up castings is admissible to show the dangerous character of the work and notice thereof to defendants.     p. 129.

8. MASTER AND SERVANT.—*Orders to Employe.—Partnership.*— Evidence that in the division of partners' work a certain partner should give orders generally is not competent where it is shown that all the partners had been present and had, at different times, given orders.     p. 130.

9. EVIDENCE.—*Declarations in Absence of Adverse Party.—Res Gestae.—Hearsay.*—Declarations to a third party, by a partner having the general power of giving orders to employes, that he would be absent on the day of the occurrence of the injury, are not a part of the *res gestae,* and are also objectionable as hearsay.     p. 131.

10. SAME.—*Declarations.—Witness to Third Party.*—Defendants in a personal injury case are not entitled to prove the declarations of their employe to a third person in explanation of the cause of plaintiff's injury.     p. 131.

11. TRIAL.—*Instructions.—Unprejudicial.*—The giving of alleged erroneous instructions does not constitute reversible error, unless they are prejudicial.     p. 131.

12. TRIAL.—*Burden of Proof.—Contributory Negligence.*—The burden of proving contributory negligence is upon the defendant. p. 133.

13. SAME. — *Instructions. — Outlining Theories of Parties. — Failure to Request on Different Theory.*—Where, from the whole record, an instruction correctly outlined the theories of the plaintiff and defendant, reversible error was not committed, although defendant contended that the theory of the defense was not correctely stated, especially where the instruction given was not prejudicial, and where no instructions were requested by defendant. p. 133.

14. SAME.—*Measure of Damages.—Pecuniary Loss.*—An instruction on the measure of damages for death by wrongful act stating in substance that the amount of recovery should be the pecuniary loss of the widow and child, is correct. p. 134.

15. DAMAGES.—*Excessive.*—A verdict for $2,250 damages for the benefit of the widow and child of a decedent whose death was caused by defendants' negligence does not show that the jury were improperly influenced. p. 134.

From Superior Court of Marion County (66,000); *James M. Leathers,* Judge.

Action by John J. Blackwell, as administrator of the estate of Michael McGlynn, deceased, against Julius Falender and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*F. Winter,* for appellants.

*Henry Warrum* and *M. A. Ryan,* for appellee.

WILEY, P. J.—Appellee recovered a judgment below against appellants, based upon their alleged negligence, which resulted in the death of appellee's decedent. Appellee's complaint was in two paragraphs, to the second of which a demurrer was overruled. Appellants' answer was a general denial. Overruling the demurrer to the amended second paragraph· of the complaint and the motion for a new trial are assigned as errors. It is averred in the amended second paragraph of complaint that appellants employed John C. Nolan to break and reduce into small pieces certain heavy pieces of iron and steel machinery,

engines, and fly-wheels located on a certain tract of ground within the city of Indianapolis; that said Nolan immediately, pursuant to said contract of employment, proceeded to do the work required of him, and that he undertook to break up said iron machinery, etc., by exploding large charges of dynamite "under, against, and upon said iron," and continued such explosions and the breaking up of said iron until August —, 1903; that the iron lay in an open place on the grounds of the Premier Steel Works, immediately west of south Capitol avenue and north of west Merrill street; that the charges used by Nolan to break the same were very large, varying from one-half pound to three pounds of dynamite to each charge, and frequently large pieces of iron were hurled by the explosions a long distance, to wit, 200 feet; that said explosions took place in the city of Indianapolis within 150 feet of streets, alleys, residences, and public grounds, to the great hazard and danger of travelers and other persons; that appellants at the time they employed Nolan and thereafter knew that he was wrongfully and carelessly using dynamite in breaking up said wheels, machinery, etc., to the great hazard and danger of people on the streets, alleys, and public places of said city; that they provided said Nolan with dynamite for such use, and from time to time gave him money to be used in the purchase of dynamite for such use, and well knew that such explosions under and against the iron "was highly dangerous to the life and limbs of persons on the alleys and streets of said city;" that on August —, 1903, the decedent was standing in a public alley immediately adjoining the tract or parcel of ground upon which the defendants' iron was located, said alley lying between a row of houses fronting on Capitol avenue, and the tract on which the iron was located; that while said decedent was in said public alley said Nolan, with the knowledge and connivance and under the directions of the defendants, negligently and carelessly exploded, discharged, and shot

off a large and heavy charge of dynamite under one of their pieces of iron, whereby a piece of said iron so broken off by such explosion was thrown and hurled through the air a distance of 200 feet, striking the decedent, and so injuring him that he died from the effect thereof. The complaint then avers that the decedent left a widow and children, who sustained damages by reason of his death, etc.

In attempting to connect appellants with the negligence resulting in the death of appellee, in the amended second paragraph of complaint the following words and phrases are to be found: "By the use and means of dynamite," "and pursuant to said contract of employment," and "and connivance and under the directions," etc., of appellants. The original second paragraph of complaint was amended by the insertion of the above words and phrases by leave of the court, just before the commencement of the trial. Thereupon appellants moved that the court require appellee to separate the paragraph as amended into two paragraphs, embracing in one paragraph the facts stated, showing that the appellants had contracted for the doing of unlawful work, or for the doing of lawful work in an unlawful manner; and in the other, that they had directed and controlled the contractor as to the method and manner of doing the work, and that the work had been done by him negligently and carelessly with their connivance and under their direction. This motion was overruled, and an exception saved. Appellants urge two objections to the amended second paragraph of the complaint: (1) That the facts pleaded show that Nolan was in charge of the work as an independent contractor. This proposition is based upon the allegation in the complaint that appellants "employed and contracted with him to do and perform the work." It is urged that there is no averment, either general or specific, that he was their servant, and that they are not responsible for his negligent acts done in his capacity as an independent contractor.

(2) That the averment that Nolan "negligently and carelessly exploded a charge of dynamite," with the knowledge and connivance and under the direction of the appellants, does not show that they had assumed control of the method and means of doing the work, or had subjected Nolan to their control so as to substitute their will for his, and make him their servant; that such allegations are not equivalent to the general allegation that he did the negligent act as their servant.

We recognize the rule that where one person contracts with another to do and perform certain work or labor, and the person for whom the work is done has no control or management thereof, the one who undertakes the work becomes an independent contractor; and if injury results from his negligent acts, and the employer has no connection with such work or acts, the contractor becomes the responsible party. It seems to us that from the averments of the complaint the work which Nolan was to do was intrinsically dangerous. It is shown that this work was to be done by the use and means of dynamite; that the explosions took place within 150 to 200 feet of public highways and residences, where people had a right to be and were; that said work was done pursuant to the contract of employment, and with the connivance and under the directions of the appellants. As a matter of pleading we are inclined to the view that the amended second paragraph of complaint does not show that Nolan was an independent contractor. The contract of employment, as disclosed by the complaint, did not merely look to the result to be attained, but also to the means and method by which the work was to be done, and which, according to the complaint, were to be determined by appellants. It very clearly appears that in using dynamite to accomplish the end, Nolan represented the will of the appellants, and therefore did not act independently and of his own volition, and in this respect he must be regarded as

having acted strictly within the line of his employment and the duty he owed to appellants. *Wabash, etc., R. Co.* v. *Farver* (1887), 111 Ind. 195, 64 Am. Rep. 696; *Powell* v. *Construction Co.* (1890), 88 Tenn. 692, 13 S. W. 691, 17 Am. St. 925; *Jensen* v. *Barbour* (1895), 15 Mont. 582, 39 Pac. 906.

The work in which Nolan was engaged, by virtue of the means employed, was hazardous, and it was being performed within dangerous proximity to the persons 3. who had a right at any time to be upon the public highways, or at or in the residences adjoining thereto. If we are wrong in holding that under all the allegations of the complaint it does not appear that Nolan was an independent contractor, yet if it be conceded that he was, the rule absolving an owner from liability for an independent contractor's negligence does not prevail where the work contemplated was intrinsically dangerous or a nuisance. 16 Am. and Eng. Ency. Law (2d ed.), 201, and cases cited; *City of Anderson* v. *Fleming* (1903), 160 Ind. 597, 66 L. R. A. 119; *Dooley* v. *Town of Sullivan* (1887), 112 Ind. 451, 2 Am. St. 209; *Zimmerman* v. *Baur* (1895), 11 Ind. App. 607; *Dehority* v. *Whitcomb* (1895), 13 Ind. App. 558; *Fitz Simons & Connell Co.* v. *Braun* (1902), 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421.

It should also be remembered in considering the sufficiency of this paragraph of complaint that the negligence complained of, and which occasioned the injuries, 4. was the result of performing the work which Nolan was employed to do, and that he did it in the manner and by the means which his contract called for. See note to *Thomas* v. *Harrington* (1903), 65 L. R. A. 742; *Carman* v. *Steubenville, etc., R. Co.* (1854), 4 Ohio St. 399. If, for no other reason, this paragraph would be good as against a demurrer, by reason of the averment that "Nolan, with the knowledge and connivance and under the

direction of the appellants, carelessly exploded, discharged, and shot off" the charge of dynamite. Our conclusion is that the demurrer was properly overruled. The questions presented by the motion for a new trial relate to the sufficiency of the evidence to support the verdict, the admission and rejection of certain evidence, and to the giving of certain instructions.

It is urged that there is no evidence showing or tending to show that appellants directed or controlled Nolan as to the method and means of doing the work, either generally or in respect to the particular explosion which it is claimed caused the injury. Also that there is no evidence that Nolan submitted in any way to the control and direction of appellants, or adopted or acted upon any advice or suggestion by them, etc. There is ample evidence to show that appellants employed Nolan to break up the large iron wheels, etc., and that they were to be broken by exploding dynamite, etc. They gave Nolan money with which to purchase the explosives. They were on the grounds where the work was being done. They told him where to place the charges to get the best results. One of them was there at the time of the explosion which produced the injury to decedent, and at one time, at least, they furnished pieces of old carpet to put over the dynamite to muffle the sound. The evidence also shows that they anticipated danger to other persons, and were afraid of their own arrest. As another indication that they knew the work was hazardous, it is shown that complaint was made to one of them by a person living in the vicinity just after one of the explosions. There was sufficient evidence as to the relations existing between appellants and Nolan for the question to be submitted to the jury. See 16 Am. and Eng. Ency. Law (2d ed.), 201. See, also, 1 Thompson, Negligence (2d ed.), §764, et seq.

Complaint is made because the court excluded evidence on the cross-examination of Nolan, to the effect that he

prepared, placed on the wheels, and exploded the charges of dynamite in the same manner as was done by some other parties when he worked for them. It is urged by appellants' counsel that this evidence was admissible as tending to show that Nolan was not controlled or directed by appellants as to methods and means used in doing the work, but that he did it in the way he had learned while he was working for such other parties; and that it was proper cross-examination by which it was attempted to be shown that he did the work as the appellants directed. This evidence was properly excluded for two reasons: (1) The manner in which other parties did the same character of work, whether proper or improper, whether they did it in a safe or unsafe manner, could not be taken as a criterion for doing the work that resulted in injury to decedent. The act complained of here must be measured and judged in the light of the existing conditions and surroundings, and the manner in which others did the work was immaterial. (2) We are unable to see how such evidence, if admitted, could throw any light upon the relations existing between appellants and Nolan. Such evidence certainly would not support the position that Nolan was an independent contractor.

The court admitted evidence offered by appellee as to the noise made by the explosions preceding the one by which it was alleged appellee's decedent was injured, the effect of such explosions upon houses in the vicinity, in disturbing their inmates, and in throwing pieces of iron and other substances. If this evidence was admissible it was upon the grounds that it showed the character and effect of the explosions, and as tending to carry notice to the appellants. It is shown that their office was across the street from the grounds where the work was being done. The explosions were terrific, and jarred buildings in the neighborhood. One witness testified that he had a grocery store at the corner of McCarty street and

Capitol avenue, and that the explosions shook him while standing in his door. Another witness testified that she lived near the location where the work was being done; that the explosions were terrific, and threw sand and dirt over her roof, shook her house to the foundation, and knocked bricks from the chimney. Another witness who lived near testified that the explosions shook the house, broke pictures on the walls, and caused "stuff" to fall on the roof "like pebbles." One witness testified that one explosion hurled a piece of casting weighing ten to twenty pounds a distance of about two hundred feet. There was evidence of other witnesses who lived near, to the effect that the explosions knocked a chimney off of a lamp, rattled and broke windows, hurled missiles through the air, etc. This evidence tends strongly to show the character and effect of the explosions, and that they were intrinsically hazardous, and were calculated to produce injury. *Fitz Simons & Connell Co.* v. *Braun* (1902), 199 Ill. 390, 65 N. E. 249, 59 L. R. A. 421. In view of the fact that appellants disclaim that they had anything to do in directing the work, and the additional fact that there is much evidence to the effect that they were, or one of them was, there directing how it should be done, and considering the great noise produced, the shaking of houses, breaking of windows, and hurling of missiles, the evidence was competent.

Appellants offered to prove by a witness by the name of Miller, that appellant Julius Falender was the one, in accordance with appellants' division of their work, who gave directions to their servants as to the work they were to do, and the manner of doing it. It is urged that the offered evidence tended to negative the evidence given showing that their coäppellant had been almost daily, and, frequently, many times a day, on the grounds where the wheels were being broken, giving directions to Nolan as to the breaking of the wheels, etc. As there is some evidence tending to show that the appel-

lants, at different times, were present and gave Nolan direc-
tions, it was wholly immaterial which one of appellants
gave orders and directions to their employes generally, and
specially is this the case where such employes had no con-
nection with the work in which Nolan was engaged.

Appellants also offered to prove by the witness Miller
that Julius Falender told him in the morning of the day
of the accident that he (Julius) would be in Muncie
on that day. Counsel contend that it was a part of
the *res gestae.* We cannot concur in this conten-
tion. *Fleming* v. *Yost* (1894), 137 Ind. 95 ; *Citizens St.
R. Co.* v. *Stoddard* (1894), 10 Ind. App. 278. It was in-
competent also because it was a self-serving declaration,
and therefore hearsay.

The court excluded evidence offered by appellants of a
conversation between a witness named Borenstein, and
Nolan, in which the latter told the former how the
decedent received his injury, and what Nolan said
to him. The evidence was properly excluded.

In their motion for a new trial appellants based error upon
the giving of the seventh, thirteenth, fourteenth, fifteenth,
seventeenth, and twentieth instructions. It is un-
necessary for us to consider all of these instructions
separately. While they are all discussed in the
brief of appellants, special stress is given to the seventeenth,
and in oral argument it was discussed at length. As to the
seventh, thirteenth, fourteenth, and fifteenth, we do not
think any useful purpose would be subserved by setting
them out even in the abstract. Considering them as applied
to the facts relied upon in the complaint, and those estab-
lished by the evidence, we find them as favorable to appel-
lants as they have any reason to ask, and they do not in-
fringe any rule of law. We are unable to see wherein they
prejudiced the rights of appellants. The seventeenth in-
struction is as follows: "The plaintiff in this case con-
tends that at the time plaintiff's decedent received the

injury resulting in his death he was standing in a public alley lying between a row of houses fronting on south Capitol avenue and the tract of ground on which said iron was located. The defendants, on the other hand, contend that at the time plaintiff's decedent was injured he was not standing in said public alley, but that he was in and upon said tract of land or place, which was the private property of the Premier Steel Works, where said Nolan was engaged in breaking up said iron and using and exploding dynamite for such purpose. It is the contention of the defendants that plaintiff's decedent was guilty of contributory negligence by going upon or entering such tract of ground at the time and place in controversy. If, therefore, you find from the evidence, that, at the time plaintiff's decedent was injured he was not standing in said public alley, but had entered upon the place or tract of ground where said iron was located, and at the time when said Nolan was engaged in the work of breaking up said iron and using dynamite for such purpose; and if you find that said tract of ground where said iron was being broken up was a dangerous place, by reason of such explosions of dynamite, and that a person entering upon such place was likely to be injured; and if you further find that plaintiff's decedent knew, or by the exercise of reasonable care and attention, under the circumstances, could have known, that said tract of ground was a place of danger by reason of such explosions, and that he would likely receive an injury by entering said tract of ground while such explosions of dynamite were being made, then, I instruct you that plaintiff's decedent was guilty of contributory negligence, and the plaintiff in this action would not be entitled to recover; and if you find from the evidence that plaintiff's decedent was guilty of contributory negligence proximately causing or contributing to his injury and death, then, I instruct you that the plaintiff in this case would not be entitled to recover,

although you may believe and find from the evidence that the defendants were chargeable with negligence and carelessness, as averred in the complaint."

It is important in considering this instruction to state that there is a sharp conflict in the evidence as to the cause of the decedent's injuries. There is evidence directly supporting the averments of the complaint that he was in the alley abutting on the grounds where the explosions occurred, and that he was injured by a missile hurled through space by the explosion. There is also some evidence that he was upon the premises where the work was being done, without invitation, and that in hurrying away to get out of danger, immediately before the explosion, he fell over a railroad track and received his injury. By this instruction the court assumed to state the respective theories of the parties, and said that it was the contention of appellants that "the defendants contended that decedent was guilty of contributory negligence in going upon the tract of ground at the time in controversy," etc. Counsel for appellants urge that this was a misstatement of the theory of the defense, and that they proceeded upon the theory that appellee's decedent was upon the premises without invitation, and hence was a trespasser to whom neither Nolan nor appellants owed "any duty of care," except not wilfully to injure him.

If the question of contributory negligence was in issue, the burden of proving it was upon appellants, and if, as contended, that was not their theory, the instruction cast an undue burden upon them.

Gathered from the entire record, we are led to the conclusion that the court correctly stated the theory upon which the case proceeded to trial, but if it did not, we cannot believe that appellants were injured by the instruction. So far as the record shows, no instruction was asked or tendered, or request made, to present to the jury any other theory.

The twentieth instruction presented to the jury the basis of the amount recoverable, if they found for appellee. The jury were told that they could not compensate any of the survivors of decedent for grief or loss of his society, but that they might consider his age, health, character, habits of industry, and his earning capacity, as shown by the evidence, and "fix" such amount of damages as you believe will be a fair pecuniary compensation to his widow and child." While this instruction might have been more aptly worded, it is clear that the jury were told, and so understood, that if they found for appellee they could only assess damages to compensate the widow and child for the pecuniary loss sustained by the decedent's death. There was no error in giving it.

It was also made a reason for a new trial that the damages assessed were excessive. The verdict was for $2,250. The amount of recovery was a question for the jury under a proper instruction. There is nothing in the record to indicate that the jury were improperly influenced in determining the amount of their verdict, and under the rule so firmly fixed by the authorities we cannot disturb their finding so expressed.

Judgment affirmed.