Argued October 17, decided November 11, rehearing denied December 30, 1913.

## WINNIFORD *v.* MacLEOD.[*]

### (136 Pac. 25.)

**Damages—Instructions—Double Liability.**

1. Where, in an action for injuries to a building in course of construction by an excessive blast set off by defendant contractor on adjoining property, it appeared that the restoration of the shingling, plastering and other work would necessarily include the time involved in their installation, and that that time would be all that would be necessarily lost by plaintiffs, an instruction authorizing a recovery not only of the whole amount which plaintiffs claimed would be required to make the repairs, but also for loss of time occasioned by the blast, was erroneous as authorizing a double recovery for the same item.

**Damages—Loss of Profits.**

2. Where contractors for the construction of a building sued for damages sustained as the result of defendant's excessive blasting, and defendant suffered a recovery of an amount sufficient to restore plaintiffs to the situation they occupied at the time of the explosion, defendant performed his whole duty, and was not liable for profits alleged to have been lost by plaintiffs in the construction of the building.

**Master and Servant—Acts of Independent Contractor.**

3. The rule that, where work is committed in all its details to a contractor, and he is responsible to his employer, not for details, but only for a finished result, the contractor alone is answerable for injury resulting to third persons in the prosecution of the work is subject to the exception that the employer must also respond, if the manner provided for carrying out·the contract is in itself injurious, or if the project is manifestly dangerous to others, and an injury ensues on account of either the method prescribed or the nature of the undertaking.

**Master and Servant—Independent Contractor—Liability of Principal.**

4. Where defendant corporation employed L. to grade certain streets and lots, and in doing so he set off an excessive powder blast, by which a building in process of construction by plaintiffs was

---

[*]The authorities on the liability of a master for negligence of independent contractor in the performance of contract requiring blasting are reviewed in notes in 14 L. R. A. (N. S.) 914 and 29 L. R. A. (N. S.) 851. And upon the liability of a master for act of independent contractor affecting safety of highway, see notes in 15 L. R. A. (N. S.) 845 and 17 L. R. A. (N. S.) 758. For the general rule as to absence of master's liability for acts of independent contractor, see note in 65 L. R. A. 622.                                     REPORTER.

injured, the corporation was not liable in the absence of proof of privity of contract or concurrence of action between it and L.

**Master and Servant—Independent Contractor—Contract—Construction.**

5. Where a corporation contracted with L.'s predecessors to grade certain streets and lots, the corporation retaining no control over the details or manner of prosecuting the work, its whole connection with the scheme being merely to furnish the survey and pay the compensation specified, the remainder of the task being imposed on the contractor, the work being a lawful and harmless undertaking, L. was an independent contractor, and the corporation was not liable for injuries resulting from an excessive blast set off by him in the prosecution of the work.

**Master and Servant — Contract for Improvement — Employer's Liability.**

6. Where a work of grading certain streets and lots or the manner of executing it as provided by the contract was not a nuisance, the employer was not guilty of maintaining a nuisance by reason of the method in which the contractor did the work, where such owner did not retain control of the premises.

[As to liability for negligence of independent contractor, see note in 76 Am. St. Rep. 382. As to who is an independent contractor, see note in Ann. Cas. 1913B, 573.]

From Multnomah: HENRY E. McGINN, Judge.

Department 2.    Statement by MR. JUSTICE BURNETT.

This is an action by D. R. B. Winniford and R. H. Mays, doing business under the firm name and style of Winniford & Mays, against A. L. MacLeod and the Lewis-Wiley Hydraulic Company, a corporation, and owner of what is known as Westover Terrace, in Portland, Oregon.

The complaint recites an ordinance of the City of Portland forbidding the explosion of gunpowder or other like material in the city limits without first having received a permit from the city engineer. It says also that prior to the explosion complained of MacLeod had obtained from the proper officer a permit to use powder for blasting in an amount not to exceed five pounds upon the tract mentioned. At the time of the grievance complained of the plaintiffs were engaged in the erection of a dwelling-house for another

near the scene of the blasting operations they describe, but had not yet completed their contract. The complaint contains these allegations:

"That for more than a year prior to October 29, 1911, the defendant A. L. MacLeod had been carrying on blasting operations in a careless, negligent, malicious and wanton manner for the defendant Lewis-Wiley Hydraulic Company upon the land owned by the defendant company, and the defendant company well knew and appreciated that the defendant A. L. MacLeod was carrying on these blasting operations in a careless, negligent, malicious and wanton manner, and in such a manner as to endanger the property in the surrounding neighborhood; that on October 29, 1911, at about the hour of 3:30 P. M., the defendants, A. L. MacLeod and Lewis-Wiley Hydraulic Company, negligently, carelessly, maliciously and wantonly, through their servants, set off and exploded at one time 50 pounds of powder at a point about 150 feet west of the said house hereinabove described; that the said explosion threw a great number of rocks at terrific speed against and into the said house; that the walls and roof and all portions of the house on the west side were damaged."

After stating as grounds of negligence that the defendants used an excessive amount of powder, and failed to warn the plaintiffs of the blast, together with other specifications of fault, the complaint concludes with the allegation:

"That by reason of the negligent acts of the defendants, and each of them, the plaintiffs have been compelled to expend the sum of $600 for putting the house into the same condition in which it was prior to October 29, 1911; that the plaintiffs have also sustained damage in addition to the damages hereinabove enumerated, in that plaintiffs have lost a week's time of the value of $300, and have lost profit to the value of $600."

The defendant MacLeod admits obtaining a permit from the city engineer to engage in blasting, but otherwise denies the complaint *in toto.*

The answer of the Lewis-Wiley Hydraulic Company traversed the complaint in nearly all particulars, and then ascribed the alleged injuries to the act of its codefendant MacLeod, asserting, in effect, that he was an independent contractor who had engaged with the defendant corporation to grade certain streets and lots in the Westover tract, assuming entire responsibility for all details, and rendering to the defendant corporation only a completed result; and that the Lewis-Wiley Hydraulic Company had no control whatever over the means or details used in working out a completion of the contract. This in turn was denied by the reply.

A jury trial resulted in a verdict and judgment against both defendants for the sum of $1,500, and each of them appeals.

REVERSED: REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Moser & McCue* and *Mr. William A. Williams,* with oral arguments by *Mr. John McCue* and *Mr. Williams.*

For respondents there was a brief over the names of *Messrs. Wilbur, Spencer & Dibble* and *Mr. B. H. Bennett,* with an oral argument by *Mr. Bennett.*

For defendant, Lewis-Wiley Hydraulic Company, there was an oral argument by *Mr. M. M. Matthiessen.*

MR. JUSTICE BURNETT delivered the opinion of the court.

As a preliminary, it may be stated that the court submitted to the jury the question of whether or not

the plaintiffs would be entitled to recover exemplary in addition to compensatory damages, and the jury found a verdict acquitting the defendants of that charge.

1. As to the defendant MacLeod, he complains of error in the court in giving the jury these instructions, to the effect that the plaintiffs would be entitled to recover not only what it would cost them to put the house back into the condition in which it was before the blast, but also for the loss of time occasioned by the blast, and, moreover, for the loss of profits which they anticipated they would reap as the fruits of their contract in building the house. Practically the only testimony given by the plaintiffs on this point was that of the plaintiff Mays, who, without giving any accurate figures, estimated that the shingling required in making repairs amounted to $75, tinwork $30, plastering $100, material work $35, painting $10, carpentering $100, total, $350. He also stated that the electric wiring and the plumbing were involved, and these were estimated by him at $10 and $50, respectively; but he admitted on cross-examination that the wiring was not injured, and that he was not responsible for the plumbing.

The cardinal principle of damages is compensation, and the defendant would fulfill his whole duty to the plaintiffs in that respect if he paid such a sum as would fairly compensate them for the injury complained of. The restoration of the shingling, plastering, and other work would necessarily include the time involved in their installation, and that time would be all that would be necessarily lost by the plaintiffs. To allow them an additional item of $300 for loss of time would be to pay them twice for the same thing.

2. The testimony about the profits was purely speculative. The plaintiffs claimed that they expected

to make a profit, but could not give any light on whether they either made or lost by the transaction. Their gain depended upon whether they could construct the house according to their engagement for less than the contract price. If the defendant had sufficiently compensated them so as to restore them to the situation which they occupied at the time of the explosion, he has performed his whole duty, and they were made whole, so that the profit is not affected further by the act of the defendant. The court was in error in instructing the jury as it did on the measure of damages.

It remains to consider the appeal of the defendant Lewis-Wiley Hydraulic Company. At the close of plaintiffs' case this defendant moved to enter judgment of nonsuit in its favor, on the grounds that the allegations against it had not been sustained by the evidence, that there was no testimony tending to show that it had participated in the explosion of any blast, particularly the one causing the injury complained of, and that no liability had been proven against it. The court overruled this motion. Later, at the close of the whole case, the defendant company moved for a directed verdict in its favor upon substantially the same grounds, and also because the testimony showed that A. L. MacLeod was an independent contractor in the prosecution of the work, over whom this defendant had no control.

3. The general rule is that, where work is committed in all its details to a contractor, and he is responsible to his employer, not for details, but only for a finished result, the former alone is answerable for injury happening to third parties in the prosecution of the work. There are exceptions to this rule. The employer must also respond if the manner provided for carrying out the contract is in itself dangerous, or if the project is manifestly dangerous to others, and an injury ensues

on account of either the method prescribed or the nature of the undertaking itself. These exceptions are well illustrated by the authorities cited for the plaintiffs here. For instance, in *Bonaparte* v. *Wiseman,* 89 Md. 12 (42 Atl. 918, 44 L. R. A. 482), the contract itself contemplated excavating below the foundation of an adjoining house. In *Cameron* v. *Oberlin,* 19 Ind. App. 142 (48 N. E. 386), the contractor was employed to burn brush and logs adjoining the plaintiff's land, as a result of which fire was communicated to the premises and property of the plaintiff to his damage. In *Falender* v. *Blackwell,* 39 Ind. App. 121 (79 N. E. 393), cited in 14 L. R. A. (N. S.) 914, note, the contractor was employed to break up castings by the use of dynamite in a place where many people were exposed to the danger of the explosion. In *Ohio S. R. Co.* v. *Morey,* 47 Ohio St. 207 (24 N. E. 269, 7 L. R. A. 701), the contract itself involved the digging of a ditch across a public traveled street. In all these cases either the undertaking itself or the manner prescribed for accomplishing it was intrinsically and manifestly dangerous to other parties, and the employer was held liable as a party to the ensuing tort.

4. In the matter of nonsuit, all the testimony proved or tended to establish was that the defendant Mac-Leod, while grading streets and lots upon the property of the codefendant, used blasting powder to aid him in removing the earth, and in so doing, on the occasion complained of, injured the house in question by an excessive blast. In order to charge the defendant company, it was necessary to go further and show some privity of contract or concurrence of action between the two defendants. This the testimony wholly failed to disclose, and the nonsuit should have been allowed.

5. The contract under which the grading of the property mentioned was carried on was introduced in

evidence. It was originally made between Lewis-
Wiley Hydraulic Company, as party of the first part,
and E. N. Timmons and John Celish, parties of the
second part, with whom the defendant MacLeod signed
as guarantor. The contract provided that: "In con-
sideration of the agreements of the first party herein
contained, the second parties hereby agree to furnish
all the labor, superintendence, equipment and ma-
terials whatsoever necessary for the completion of
certain grading at and about Westover Terrace, in the
City of Portland, county of Multnomah, and State of
Oregon, as more particularly set forth in the specifica-
tions for such grading hereinafter contained, as a part
of which said specifications and of this instrument
express reference is hereby made to a certain map or
plat of said Westover Terrace, and lands contiguous
thereto, hereto attached and marked 'A.' Said speci-
fications are as follows, to wit: Grade Melinda Ave-
nue and River View Drive from the end of the pres-
ent existing pavement on Melinda Avenue to a junction
with the operations of the first party at the intersec-
tion of River View Drive and Mountain View Drive.
[Then follows a long list of similar specifications re-
lating to different lots, blocks and streets.] The first
party agrees to stake out said work, so as to show all
street lines, cuts, fills and slopes as set forth in the
foregoing specifications, and as approximately shown
on said map or plat hereto attached, and will from
time to time furnish, on application of the second par-
ties therefor, such additional information as may be
required for the guidance and information of the sec-
ond parties in the conduct of said work, and the second
parties agree to make all cuts and fills in accordance
with such staking, and in each and every instance to
dress the streets and slopes to the true line and surface
without back filling. Slopes in excavation shall be
between one on one and one on one half, and slopes on

embankment shall, in general, be as steep as they can be made consistently with stability, and considering the nature of the material used; but, whether in excavation. or in embankment, they shall in all cases conform to the staking of the first party and to any requests which the first party may from time to time during the progress of the work make of the second parties.'' The remainder of the contract relates to the rate of payment. It appeared that the principal second parties failed in their undertaking, and that the work was assumed by the defendant MacLeod under the contract quoted. This contract was the rule of action affecting the parties to it, and governing their relations. It also established their liabilities and responsibilities respecting the work in hand. The defendant company retained no control over the details or the manner of prosecuting the work. Its whole connection with the scheme was to furnish the survey and pay the compensation. The remainder of the task was incumbent upon the contractor. The contract was for grading. It was a lawful, harmless undertaking. There was nothing about it intrinsically dangerous to anyone. The fallacy of the argument for the plaintiffs consists in the assumption that the contract required blasting and the use of dangerous quantities of powder. So far as the defendant company was concerned, it mattered not whether the contractor excavated the earth by the use of large steam shovels, by hydraulic process or by picks and shovels, or whether he removed it by trains of cars, by wheelbarrows, or in bags. The method of performing a harmless work was left to the contractor, and the latter alone is responsible for damages involved and arising out of the manner of accomplishment. Whether we consider the question as one of failure of proof entailing a nonsuit, or as a question of di-

rected verdict, it should be decided in favor of the defendant company.

6. At the argument, the plaintiffs counted on their allegation that the defendant MacLeod had been carrying on blasting operations on the premises in question for more than a year prior to the happening of the injury, all of which was well known to the defendant company. The contract under which the work was performed bore date April 18, 1911, while the injury happened October 29, 1911. The argument was that the land owner was liable for the negligence of an independent contractor where the work constituted a continuing nuisance. This argument, however, must be qualified by the principle that, unless the project itself or the manner of executing it as provided in the contract constitutes such a nuisance, the employer will not be guilty of maintaining it, unless he retains such control of the premises as would make him responsible in the first instance. This distinction is made clear in *Clark* v. *Fry,* 8 Ohio St. 358 (72 Am. Dec. 590), cited by plaintiffs, where Mr. Chief Justice BARTLEY sums up the discussion in this language: ''It is very true, if the owner of real estate should willfully allow a nuisance to be created or to be continued by another on or adjacent to his premises, in the prosecution of a business for his benefit and under his authority, when he had full power to prevent or abate the nuisance, he would be justly liable for any injury which might result therefrom to another person.'' The present case, however, is distinguishable from the doctrine there laid down. Here the nuisance, if any, arose from the manner of prosecuting an undertaking originally harmless in its nature. Measuring the defendant company's authority by the legitimate contract appearing in evidence, the nuisance was not created by its authority, without which it could not

prevent nor abate the nuisance; that feature. being under the entire control of the contractor.

The judgment of the Circuit Court will be reversed for new trial as to the defendant MacLeod, with directions to dismiss the action as to the defendant Lewis-Wiley Hydraulic Company.                REVERSED.

Mr. Justice Bean, Mr. Justice Eakin and Mr. Justice McNary concur.