(135 So. 466)

### LOUISVILLE & N. R. CO. v. HALL.

6 Div. 704.

Supreme Court of Alabama.

April 30, 1931.

Rehearing Denied June 27, 1931.

John S. Stone, White E. Gibson, M. Leigh Harrison, and John S. Stone, Jr., all of Birmingham, for appellant.

340

Chas. A. Calhoun and Coral W. Calhoun, both of Birmingham, for appellee.

BROWN, J.

The plaintiff, while engaged in work, with others, as an employee of the defendant, a carrier engaged in interstate commerce, in attempting to break a large rock with dynamite, that obstructed the free passage of defendant's trains over the Warrior branch, received personal injuries which necessitated the amputation of one of his legs six inches above the knee. To recover damages for that injury, he brought this suit under the Federal Employers' Liability Act (45 USCA §§ 51–59), and recovered the judgment from which the defendant has appealed.

The complaint ascribed the injury to "the negligence of the officers, agents or employees of the defendant as such common carrier while acting in the line and scope of their employment as such, in this: that such officers, agents or employees so negligently conducted themselves in and about the direction, management or control of the blasting and breaking up of said rock as to injure plaintiff at said time and place as aforesaid."

The defendant pleaded the general issue and assumption of risk. The defendant's eighth plea alleges "that the plaintiff assisted in doing the blasting described in the complaint, and knew that the said fragments of rock would be thrown into the air when the explosion from said explosives occurred, *and with knowledge* of said fact, voluntarily failed to go to and remain at a place at which there was no danger of being struck by any of said fragments." (Italics supplied.)

No point is made in the brief of appellant as to the sufficiency of the complaint, though the rulings on the demurrers interposed thereto are assigned as error. Therefore, without affirming that the complaint was sufficient in its averment of negligence, as against the demurrer, we treat these assignments of error as waived. Keeton v. Northern Alabama R. R. Co., 222 Ala. 224, 132 So. 35.

It is well settled, however, that, in action under the Federal Employers' Liability Act, the rule as to the burden and quantum of proof necessary to require a submission of the issues to the jury is of the substance of the cause of action, and the rule recognized by the courts of the United States must be applied by the state courts, but on the question of procedure and practice, the state courts are governed by the laws of the state. Therefore, in this state averment showing that the party injured, in consequence of the negligence of the defendant or its employee, was an employee of an interstate carrier, and at the time of his injury was engaged in interstate commerce, must be supplemented by averments showing that the negligence complained of was a proximate cause of such injury. Illinois Central R. R. Co. v. Johnston,

205 Ala. 1, 87 So. 866; L. & N. Ry. Co. v. Stewart's Adm'x, 156 Ky. 550, 161 S. W. 557; Milwaukee & St. Paul R. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Chesapeake & Ohio Ry. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016.

The appellant's first contention is that error was committed by the court in refusing the affirmative charge requested by it in writing, for that (a) the plaintiff failed to prove the negligence alleged in the complaint; and (b) the evidence conclusively shows that plaintiff assumed the risk incident to the work in which he was engaged at the time of his injury.

Treating these questions in the order of their statement, and applying the rule recognized by the courts of the United States, that the burden is on the plaintiff to show negligence, and to adduce evidence which removes the question at issue from the field of mere speculation and conjecture, "and warrants the jury in proceeding to a verdict in favor of the plaintiff" (Bowditch v. City of Boston, 101 U. S. 16, 25 L. Ed. 980; Delaware, Lackawanna & Western R. Co. v. Converse, 139 U. S. 472, 11 S. Ct. 569, 35 L. Ed. 213; Illinois Central R. Co. v. Johnston, supra), the judgment here is that there was evidence going to show negligence which justified the submission of the case to the jury.

To state the substance of the evidence and the principles of law applicable, the plaintiff was a section hand and his regular employment was on the main line, as a member of the crew under section foreman Long of the Monmouth section, and on the morning of the day of his injury went to his regular work. Around 10 o'clock of the day the division supervisor, Mr. Busby, called Long and his crew, and another crew under the foremanship of Burke, to go to a point near Majestic on the Warrior branch and clear the track of a slide resulting from heavy rainfall. The slide consisted of earth and rock that had slipped down from a high embankment into the cut; one large rock, approximately twelve feet in height, ten feet wide, and eight feet thick, resting so near the tracks as to interfere with the movement of trains.

The two crews and their foremen, working under the immediate, personal supervision of Mr. Busby, cleared away the dirt from the top of the stone which lay in a slanting position, and, according to one phase of the evidence, after digging out a hole or "duck's nest," placed therein powder, and from twenty to twenty-five sticks of dynamite, and on top of these explosives placed from one and a half to two tons of small rock of different sizes and shapes. The end of a fuse from four and one half to five feet in length, with a percussion cap thereon, was embedded in one of the sticks of dynamite. The plaintiff

and another section hand, as directed by Busby, placed the charge and attached the fuse. Section Foreman Burke cut the fuse, then, as directed, plaintiff lighted the fuse, and he and Perryman climbed down off the rock, and, with the others, some of whom, including Busby, had already gone, sought such cover as in the emergency each could discover for himself. Busby, it seems, took the motorcar on which the dynamite in the case was placed, and, when the explosion occurred, was one-half mile from the slide. The plaintiff ran between six and seven hundred feet down the track, and sought cover in a depression in the embankment of the cut that sheltered him from the direct course of the explosives. Just as he lay down in this depression the explosion took place, throwing small rock placed on top of the charge up, and these fell in every direction covering an area of seven or eight hundred feet, one of which, weighing six or seven pounds, fell upon plaintiff's leg, crushing the bone and lacerating the ligaments and muscles thereof in such sort as to necessitate the amputation of his leg.

The plaintiff's evidence further tended to show that, while he had worked in coal mines and used explosives in blasting, his experience was limited to the practice of drilling holes in which the explosives were placed, and he had had no experience in making "dobie shots" such as was made on the occasion of his injury. The plaintiff's evidence further tended to show that no warning was given as to the danger incident to and as a consequence of such shot, where quantities of small rock were piled on top of the explosives, and no instructions were given the men as to where they should go for cover. The evidence further showed that a new fuse, such as was used on this occasion, would burn about one foot per minute.

The defendant's section foreman, A. P. Long, was offered as a witness by the plaintiff, and testified: "I know what a dobie shot is. That is what I thought we were making, a kind of dobie shot, what I had always heard them called. A dobie shot is putting dynamite down and laying damp mud or dirt on top of it. That is what I had always known it to be. I don't know that I have ever known of rock to be put on top of rock before this. I always just used mud myself; I never put rock. This was quite a large rock. I figure it weighed about twenty-five or thirty tons, it was taller than the head. Towards Majestic, about the same distance that Mr. Hall and the other boy went, going towards Morris, there was shelving rock on the hill. We all got under it after Mr. Hall got hurt. We didn't get under it before, not at the time the first blast was made."

The plaintiff, in addition to this testimony, adduced two or more witnesses "who had gained by experience and acquaintance with the subject" of laying and firing dobie shots, in breaking large rocks, "not common to others," who gave their opinion that the proper course to pursue was not to place on top of the dynamite large quantities of stone, but to place thereon mud, as the term "dobie" indicates, and one or more of these witnesses testified that "dobying" was the proper method of breaking rock in thickness from twenty-four inches down, and, if more than twenty-four inches in thickness, the proper method was to drill the rock and place the dynamite in the drill hole. Staples v. Steed, 167 Ala. 241, 52 So. 646, Ann. Cas. 1912A, 480.

Mr. Busby testified, in part, "I had entire charge and management and control of the men on this occasion. I suggested the method of getting up there and clearing the stuff off the top of the rock and shooting it in that way. I didn't particularly suggest it. I just told them to do it. I never had any practical experience in shooting dynamite from a personal standpoint, but I have been here as supervisor and have been having it shot for fifteen years. I never shot any dynamite myself in my life." He also testified: "I issued instructions to the men in the presence and hearing of Mr. Hall to take precautions for their own safety. I said to them, 'Boys this is going to be a hard shot, get away from there.' As to whether it was in the presence or hearing of Mr. Hall, I judge Mr. Hall heard it. I was within fifteen or twenty feet of him I suppose and I ordinarily talk very loud and see no reason why they could not have heard it." He also testified: "I didn't tell them to put rock on top of the dynamite. I can't tell you whether rock was put on it or not; if it was I didn't see it. I was not there on the rock they were on. I was on the track looking at them. I was the superior to anybody around there for the L. & N. Railroad."

In these circumstances, it was Busby's duty not to create or allow such conditions to develop as would render an injury probable, which by the exercise of due care might have been foreseen and prevented. Louisville & Nashville R. R. Co. v. Handley, 174 Ala. 593, 56 So. 539; Sloss-Sheffield S. & I. Co. v. Green, 159 Ala. 182, 49 So. 301; Tennessee C., I. & R. R. Co. v. George, 161 Ala. 422, 49 So. 681; Western Steel Car & Foundry Co. v. Cunningham, 158 Ala. 369, 48 So. 109; 11 R. C. L. 695, § 50; Mahoney v. Cayuga Lake Cement Co., 208 N. Y. 164, 101 N. E. 802.

The question of assumption of risk, under the evidence, was also a jury question. To adopt the language of the opinion of the court in Chesapeake & Ohio Ry. v. De Atley, 241 U. S. 310, 315, 36 S. Ct. 564; 566, 60 L. Ed. 1016: "According to our decisions, the settled rule is not that it is the duty of an employee to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose

·conduct the employer is responsible, but that the employee may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

■■ The plaintiff, on entering into his contract of employment, only assumed the risk normally incident to that occupation, an obvious risk arising from want of care, and, on the evidence before us, the question as to whether the injury resulted from ordinary risk, this being the only risk pleaded, or whether it was the proximate consequence of negligence on the part of Busby, was a question for jury decision. Chesapeake & Ohio Ry. Co. v. De Atley, supra; 2 Roberts, Federal Liability of Carriers, § 831, pp. 1606–1617.

In the case of Louisville & N. R. Co. v. Morgan's Adm'r, 225 Ky. 447, 9 S.W.(2d) 212, cited by appellant, it was held that plaintiff's intestate was not at the time of his death engaged in interstate commerce, and his case was governed by the rule of the common law.

■ It is well settled that a witness who has qualified as an expert—that is, one who has gained by experience an acquaintance with the subject, a knowledge not common to others—may, on the hypothesis of the facts and circumstances developed by the evidence, state his opinion as to the proper course to pursue in performing the work. Eureka Co. v. Bass, Adm'r, 81 Ala. 200, 8 So. 216, 60 Am. Rep. 152; Staples v. Steed, 167 Ala. 241, 52 So. 646, Ann. Cas. 1912A, 480; Louisville & N. R. Co. v.' Hall, 87 Ala. 708, 6 So. 277, 4·L. R. A. 710, 13 Am. St. Rep. 84; McCarthy & Baldwin v. Louisville & N. R. Co., 102 Ala. 193, 14 So. 370, 48 Am. St. Rep: 29; 11 R. C. L. 616, § 38.

And "when the merit or quality of conduct is not within the ordinary cognizance of the jury, an expert witness is allowed to say whether, in his opinion, specified conduct was or was not careful, proper, or suitable." Knowlton v. Central of Georgia Railway Co., 192 Ala. 456, 68 So. 281, 282.

■■ But it is not permissible for an expert witness to testify to a particular custom in performing dangerous work, nor that he did on a particular occasion in no way related to the matter at issue. Such evidence is patently irrelevant and immaterial, and incapable of being made so. Kansas City, Memphis, Birmingham R. Co. v. Burton, 97 Ala. 240, 12 So. 88; Maxwell v. Eason, 1 Stew. (Ala.) 514; Falender v. Blackwell. 39 Ind. App. 121, 79 N. E. 393; Bailey v. New Haven & N. Co., 107 Mass. 496. Nor is it permissible to show the customs and usages of others in performing such work, In Kansas City, Memphis & Birmingham R. Co. v. Burton, supra, it was said:

"It is not important, in this connection, what the customs and usages of other well-regulated railroads were, in respect of placing cars in dangerous proximity to other tracks. It is the well-settled law that the fact that other well-regulated companies engaged in this business use certain appliances, etc., will justify the use of such appliances by a defendant company, and the same rule would perhaps obtain with respect to the manner of constructing a roadway; and in Holland v. Tenn. Coal, Iron & R. R. Co., 91 Ala. 444, 8 So. 524, 12 L. R. A. 232, this doctrine was held to apply to the employment of a certain class of servants by the master to perform particular service, to the extent of holding that the custom and usage of other well-regulated concerns, engaged in the same business, to employ that class of servants to do that particular work, was competent evidence tending to show due care on the part of the master, in the instance under consideration, in employing such servants; but the doctrine has never been extended to a case like this, and we are not inclined to so extend it now. The basis of the doctrine in all cases is that it is reasonably safe, or at least that the fact of so doing goes to show that it is reasonably safe, in a defendant to employ those means, to any legitimate end, which others engaged in well-regulated businesses of like kind employ to those ends; and this whether the means in a given case be machinery or men, appliances or servants, of particular qualifications, or lack of especial qualifications. But the doctrine has never been supposed to cover or apply to the manner in which the means are made to accomplish the end the precise way of using machinery or directing the servants; so that a result accomplished which is negligent in itself is shorn of its negligent quality, not because it is not negligence in others to so act, but simply because, whether negligence or not, they do so act. Here, if the car was left too near the other track, it was negligence, for which there was no justifying necessity. It was a wrong, pure and simple, and it can be none the less a wrong because of its having been committed by other railroads, whether they, in a general sense, be well regulated or not. Several assignments of error addressed to rulings of the court on evidence and on charges requested by the defendant must fall under this view of the law. Hibler v. McCartney, 31 Ala. 501; Hill v. Portland & R. R. Co. [55 Me. 438], 92 Am. Dec. 601; 16 Amer. & Eng. Enc. Law, 462, and authorities there cited." 97 Ala. 251, 252, 12 So. 88, 93.

The defendant's objection to the question put to the witness Bagley by plaintiff's counsel on his direct examination, "What did

you do yourself in shooting a rock of that kind?" was well taken, and the court erred in overruling the objection. Bufford v. Little, 159 Ala. 300, 48 So. 697.

 The appellant's next contention is that the court erred in charging the jury in the oral charge that: "If after a fair and full consideration of the evidence in this case, if you are reasonably satisfied from the evidence that the defendant, through its servants, agents or employees, was guilty of negligence, and that negligence was the sole proximate cause of the alleged injuries to the plaintiff, then your verdict should be in favor of the plaintiff."

The objection to this portion of the charge is: (1) It violates the doctrine of respondeat superior in omitting the element that the negligence must have occurred while the officer, agent, or servant was acting within the scope of his employment. This contention, we think, overlooks the language of the instruction that the jury muust find "that the defendant, through its officers, agents, or employees was guilty of negligence."

Another criticism is that the instruction does not limit the right to recover for the negligence declared in the complaint.

The answer to this criticism is, that the complaint ascribes the injury to negligent conduct of defendant's officers, agents or employees in and about the direction and management or control of the blasting, and this is the only theory which the evidence in any way tends to support. Therefore, when the charge is considered in the light of the averments of the complaint and the evidence, it is not subject to the criticism. In the case cited to support this contention, Mobile & O. R. Co. v. Williams, 219 Ala. 238, 121 So. 722, 729, it was observed: "It may be that such charges under some circumstances would not be injurious, as where only one theory of negligence is claimed in the complaint and in the argument."

 The next criticism is that the instruction ignores the defense of assumption of risk. It is well settled that an employee, under the Federal Employers' Liability Act, does not assume risk arising from the negligence of the defendant's officers, agents, or employees, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them. None of the pleas of assumption of risk avers that an extraordinary risk arose from the want of care on the part of defendant's servant in charge of the work, and that the danger arising therefrom was so obvious that an ordinarily careful person would have observed it. Under the issues presented by the pleadings, this charge was not erroneous. Chesa-

peake & Ohio R. Co. v. De Atley, 241 U. S. 310, 36 S. Ct. 564, 60 L. Ed. 1016.

 Among other written charges given at the instance of the defendant was the following: "If you are reasonably satisfied from the evidence in this case that the plaintiff assisted in doing the blasting described in the complaint, and knew that the said fragments of rock would probably be thrown into the air when the explosion from said explosives occurred, and with knowledge of said fact, *voluntarily failed* to go to and remain at a place at which there was no danger of being struck by any of said fragments, you must find for the defendant."

This charge is in the language of defendant's plea 8, and, on motion for new trial, the defendant insisted, and the insistence is here renewed, that the evidence conclusively and without dispute proved the averments of said plea; and hence the hypothesis of the charge, and therefore the conclusion of the jury as expressed in the verdict, is contrary to law as given in this charge, and on the authority of Talley v. Whitlock, 199 Ala. 28, 73 So. 976, the circuit court erred in refusing to grant the motion for a new trial.

There is no room for controversy that all of the averments of said plea were proven without dispute, except the averment that plaintiff *"voluntarily failed to go to and remain at a place at which there was no danger of being struck by any of said fragments."* (Italics supplied.) One definition of "voluntary" is: "Done by design or intention; intentional; purposed; intended; not accidental." Webster's New International Dictionary. The averments of the plea, therefore, imply, at least, that plaintiff, with knowledge of the danger, designedly went and remained where he was injured.

The evidence pertinent to this question is, that plaintiff and Perryman were the last to leave the rock upon which the blast was laid; that plaintiff was instructed to light the fuse, and, after the fuse was lighted, the plaintiff and Perryman climbed down off the rock, and plaintiff ran and trotted, along with Burke and others, down the track towards Morris, plaintiff continuing his course, going further than some of the other workmen, until just before the explosion, when he went in behind a depression in the embankment and lay down.

In view of this evidence, it cannot be said that plaintiff, with knowledge of the danger, purposely or designedly went to and remained at the place where he was injured. In the circumstances, he was acting in an emergency, and, according to some of the evidence, without warning or instructions as to the danger of stopping in the open.

We cannot therefore affirm that the court erred in overruling the motion for a new trial.

All of the Justices concur in the opinion, except in so far as it holds that the court erred in overruling the defendant's objection to the question asked the witness Bagley: "What did you do yourself in shooting a rock of that kind?" As to this ruling the majority, consisting of SAYRE, THOMAS, BOULDIN, and FOSTER, JJ., are of opinion that the question called for the opinion of the witness, shown to be qualified as an expert, or the answer of the witness was in effect the opinion of the witness as to whether or not the method of doing the work adopted by the defendant "was careful or proper" and within the rule. Knowlton v. Central of Ga. Ry. Co., supra.

ANDERSON, C. J., concurs in the opinion.

GARDNER, J., also concurs in the opinion, but is of the further opinion that the error was without injury.

Affirmed.

SAYRE, GARDNER, THOMAS, BOULDIN, and FOSTER JJ., concur.

ANDERSON, C. J., and BROWN, J., dissent.